OXLEY STAVE COMPANY *v.* BUTLER COUNTY.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 221. Argued March 19, 1897. — Decided April 19, 1897.

This court cannot review the final judgment of the highest court of a State even if it denied some title, right, privilege or immunity of the unsuccessful party, unless it appear from the record that such title, right, privilege or immunity was "specially set up or claimed" in the state court as be-

longing to such party under the Constitution or some treaty, statute, commission or authority of the United States. Rev. Stat. § 709.

The words "specially set up or claimed" in that section imply that if a party in a suit in a state court intends to invoke for the protection of his rights the Constitution of the United States or some treaty, statute, commission or authority of the United States, he must so declare; and unless he does so declare, "specially," that is, unmistakably, this court is without authority to reëxamine the final judgment of the state court. This statutory requirement is not met if such declaration is so general in its character that the purpose of the party to assert a Federal right is left to mere inference.

THE case is stated in the opinion.

*Mr. Isaac H. Lionberger* for plaintiffs in error.

*Mr. John F. Dillon* and *Mr. Frank M. Estes* for defendant in error. *Mr. Winslow S. Pierce*, *Mr. Harry Hubbard* and *Mr. Henry N. Phillips* were on their briefs.

MR. JUSTICE HARLAN delivered the opinion of the court.

This writ of error brings up for review a final judgment of the Supreme Court of Missouri reversing a judgment of the Circuit Court of the city of St. Louis, Missouri, setting aside and declaring to be null and void certain conveyances of lands in Butler County, Missouri, and quieting the title thereto of the present plaintiffs in error.

It is contended on behalf of the defendants in error, who were defendants below, that, under the statutes regulating the jurisdiction of this court, we have no authority to reëxamine that judgment.

It appears from the petition that the lands in controversy were part of the lands granted to Missouri by the swamp-land act of September 28, 1850, 9 Stat. 519, c. 84, and were subsequently, in 1857, patented by the State to the Cairo and Fulton Railroad Company, a Missouri corporation, in payment of a subscription to the capital stock of that company by the county of Butler, Missouri, which subscription was made under the authority of the State; that in payment of certain bonds

issued by it, the railroad company, on the 23d of May, 1857, conveyed the lands in question, with other lands, to John Moore, John Wilson and A. G. Waterman, as trustees; that in 1871 Chouteau, having become the owner of the greater portion of such bonds, brought suit in the Circuit Court of Mississippi County, Missouri, for the foreclosure of the above deed of trust, in which suit there was a decree for the defendants; that such decree was reversed by the Supreme Court of Missouri, and a decree of foreclosure directed to be entered; that the lands were accordingly sold by a commissioner, Chouteau becoming the purchaser; and that afterwards, on the 19th day of November, 1886, Chouteau conveyed the same, with other lands, to the plaintiffs in error.

The petition also alleged that the county of Butler, November 7, 1866, filed in the Circuit Court of Butler County its petition against the Cairo and Fulton Railroad Company and Moore, Wilson and Waterman, trustees as aforesaid, for the purpose of cancelling and setting aside the patent from the State to the Cairo and Fulton Railroad Company, as well as the deed of trust from the railroad company to Moore, Wilson and Waterman, trustees; that in that suit "service was attempted to be had by publication, the plaintiffs in said cause alleging that the said Moore, Waterman and Wilson were non-residents of the State of Missouri; that in the said proceeding the said Cairo and Fulton Railroad Company were brought in, as was pretended, by personal service; but your complainants herein here aver, charge and show the fact to be that the service in said cause, the pretended appearance of the defendants by their attorney and in their own proper persons, was, in fact, a fraud and deception imposed upon the Circuit Court trying said cause; that in truth and in fact the said Waterman, previous to the bringing of said action in said Circuit Court, and said Moore, soon after the bringing of said action and before service upon him therein had been obtained, had departed this life, and their successors in said trust and as trustees had been appointed in pursuance to the provisions of the said deed of trust; that in consequence of their said deaths and the appointment of their successors as such trustees, as aforesaid, no service

was had in said cause, the new trustees were not made parties, were not served with process and had no notice of proceedings, although necessary and proper parties. The other defendant in said cause, viz., the said Cairo and Fulton Railroad Company, was not a necessary or proper party, as by the foreclosure of the state lien on said railroad under what is known as the sell-out act and the purchase of said railroad under said sale the said company, before the commencement of said suit, was dissolved and had ceased to exist and could not legally be made a party to said proceedings; that the only party defendant to said proceedings that was in fact present or pretending to make a defence in said action was Green L. Poplin, who had at one time been the president of the said railroad company, but long previous to the bringing of said suit had ceased to be connected with the said Cairo and Fulton Railroad Company in any capacity whatever, but was in fact acting in collusion with the attorneys and agents of said Butler County to aid said Butler County and its attorneys to avoid and disregard their said contract with the Cairo and Fulton Railroad Company. And these complainants aver and charge the fact to be that notwithstanding the fact that the said Circuit Court proceeded to find the issues in said case for the said county of Butler, and to decree that the said deed from the State of Missouri to the Cairo and Fulton Railroad Company and the deed of trust from said railroad company to the said Moore, Waterman and Wilson be cancelled, set aside and for naught held, and that the interest of the defendants therein be divested out of them and invested in said county of Butler, that all said pretended proceedings were null, void and of no effect whatever on account of the collusion of the parties thereto, and because the parties holding the title under said deed of trust in trust for the holders of the bonds of the said Cairo and Fulton Railroad Company were not parties to said suit and did not appear thereto, either in person or by attorneys. And because neither the said bondholders nor their assigns were in court by service of process or otherwise."

It was further alleged that in the year 1863 a number of judgments were obtained in the Circuit Courts of Mississippi

County, Missouri, against the railroad company, and part of
the lands in controversy were sold under execution, various
persons becoming the purchasers and receiving conveyances.
The petition sets out various sales of lands embraced in the
above deed of trust, and makes defendants numerous parties
who were in possession claiming title, including the St. Louis,
Iron Mountain and Southern Railroad Company. The peti-
tion avers that in the several suits in the Butler Circuit Court
the railroad company " was the only defendant; neither said
trustee or the bondholders were made parties to said suits,
neither did they in any way have notice thereof or appear
therein by attorney or otherwise, and whatever rights said
judgment creditors acquired · by reason of their said several
judgments, and whatever title the said purchaser at said
sheriff's sale made under said judgments acquired, were subject
and subservient to the said first deed and the rights of the
bondholders of said Cairo and Fulton Railroad Company.
The. purchasers at said foreclosure proceeding under the de-
cree of. the Supreme Court took a paramount and superior
title to all said parties and purchasers at said sheriff's sale;
that the said sheriff's deeds made to the purchasers at said
execution sales conveyed no title to the said purchaser as
against the prior lien of the said trustees under said trust
deed," etc.

· In the court of original jurisdiction the issues were found
for the plaintiffs. Some of the defendants moved to set aside
the finding and judgment upon these general grounds : Be-
cause the court erred in admitting improper, illegal, irrelevant
and incompetent evidence and in rejecting proper, legal, rele-
vant and competent evidence ; in refusing to sustain defendants'
demurrer to the plaintiffs' evidence offered at the close of plain-
tiffs' case ; in finding the issues in favor of the plaintiffs and in
rendering a decree in their favor ; and because the decree was
against the weight of the evidence. The motion for a new
trial was overruled, and the cause was carried to the Supreme
Court of Missouri upon the appeal of the county of Butler and
others. By the latter court the judgment was reversed, and
the cause remanded to the Circuit Court of the city of St.

Louis with instructions to enter a final decree dismissing the bill.

The opinion of the Supreme Court of Missouri is reported in 121 Missouri, 614.

We have made a full statement of the case because of the earnest contention of the plaintiffs in error that this court has authority to reëxamine the final judgment of the Supreme Court of Missouri.

This court may reëxamine the final judgment of the highest court of a State when the validity of a treaty or statute of or an authority exercised under the United States is "drawn in question" and the decision is against its validity, or when the validity of a statute of or an authority exercised under any State is "drawn in question" on the ground of repugnancy to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity. But it cannot review such final judgment, even if it denied some title, right, privilege or immunity of the unsuccessful party, unless it appear from the record that such title, right, privilege or immunity was "specially set up or claimed" in the state court as belonging to such party, under the Constitution or some treaty, statute, commission or authority of the United States. Rev. Stat. § 709.

Looking into the record we do not find that any reference was made in the court of original jurisdiction to the Constitution of the United States. Nor can it be inferred from the opinion of the Supreme Court of Missouri that that court was informed by the contention of the parties that any Federal right, privilege or immunity was intended to be asserted. For aught that appears the state court proceeded in its determination of the cause without any thought that it was expected to decide a Federal question.

The Supreme Court of Missouri properly said that only two questions were presented by the record for its determination: "First. Were the subscriptions by the county courts (county and district) of Butler County to the stock of the Cairo and Fulton Railroad Company, and the conveyance of the swamp lands of that county to said railroad in satisfaction of said

subscriptions, authorized by law? Second. Ought the decree of the Circuit Court of Butler County annulling the conveyance of said lands to be set aside for the reasons urged by the plaintiffs, to wit, first, because procured by fraud, and, second, because two of the defendants named in it were dead at the time of its rendition, and the railroad company a dissolved corporation?"

. Whether the subscriptions by the county court of Butler County to the stock of the railroad company and the conveyance to that company were valid, and whether the decree which the plaintiffs sought to have declared void was obtained by fraud, were questions of local law or practice in respect of which the judgment of the state court was final.

The only remaining question was not otherwise raised than by the general allegation that the decree was rendered against dead persons as well as in the absence of necessary parties who had no notice of the suit, and therefore no opportunity to be heard in vindication of their rights. Do such general allegations meet the statutory requirement that the final judgment of a state court may be reëxamined here if it denies some title, right, privilege or immunity "specially set up or claimed" under the Constitution or authority of the United States? We think not. The specific contention now is that the decree of the Butler County Circuit Court in the suit instituted by the county of Butler was not consistent with the due process of law required by the Fourteenth Amendment of the Constitution of the United States. But can it be said that the plaintiffs *specially* set up or claimed the protection of that amendment against the operation of that decree by simply averring — without referring to the Constitution or even adopting its phraseology — that the decree was passed against deceased persons as well as in the absence of necessary or indispensable parties?

This question must receive a negative answer, if due effect be given to the words "specially set up or claimed" in section 709 of the Revised Statutes. These words were in the twenty-fifth section of the Judiciary Act of 1789 (1 Stat. 85), and were inserted in order that the revisory power of this court

should not extend to rights denied by the final judgment of the highest court of a State, unless the party claiming such rights plainly and distinctly indicated, before the state court disposed of the case, that they were claimed under the Constitution, treaties or statutes of the United States. The words " specially set up or claimed" imply that if a party intends to invoke for the protection of his rights the Constitution of the United States or some treaty, statute, commission or authority of the United States, he must so declare ; and unless he does so declare "specially," that is, unmistakably, this court is without authority to reëxamine the final judgment of the state court. This statutory requirement is not met if such declaration is so general in its character that the purpose of the party to assert a Federal right is left to mere inference. It is the settled doctrine of this court that the jurisdiction of the Circuit Courts of the United States must appear affirmatively from the record, and that it is not sufficient that it may be inferred argumentatively from the facts stated. Hence, the averment that a party resides in a particular State does not import that he is a citizen of that State. *Brown* v. *Keene*, 8 Pet. 112, 115; *Robertson* v. *Cease*, 97 U. S. 646, 649. Upon like grounds the jurisdiction of this court to reëxamine the final judgment of a state court cannot arise from mere inference, but only from averments so distinct and positive as to place it beyond question that the party bringing a case here from such court intended to assert a Federal right.

As the argument at the bar indicated some misapprehension as to our decisions upon this subject, it will be appropriate to refer to some of them.

In *Maxwell* v. *Newbold*, 18 How. 511, 516, which was a writ of error to the Supreme Court of Michigan, this court, speaking by Chief Justice Taney, and referring to the twenty-fifth section of the Judiciary Act of 1789, and the interpretation placed upon it in *Crowell* v. *Randell*, 10 Pet. 368, said: "Applying this principle to the case before us, the writ of error cannot be maintained. The questions raised and decided in the state circuit court point altogether for their solution to the laws of the State, and make no reference whatever to the

Constitution or laws of the United States. Undoubtedly, this did not preclude the plaintiffs in error from raising the point in the Supreme Court of the State, if it was involved in the case as presented to that court. And whether a writ of error from this court will lie or not, depends upon the questions raised and decided in that court. But neither of the questions made there by the errors assigned refer in any manner to the Constitution or laws of the United States, except the third, and the language of that is too general and indefinite to come within the provisions of the act of Congress, or the decisions of this court. It alleges that the charge of the court was against, and in conflict with, the Constitution and laws of the United States. But what right did he claim under the Constitution of the United States which was denied him by the state court? Under what clause of the Constitution did he make his claim? And what right did he claim under an act of Congress? And under what act, in the wide range of our statutes, did he claim it? The record does not show; nor can this court undertake to determine that the question as to the faith and credit due to the record and judicial proceedings in Ohio was made or determined in the state court, or that that court ever gave any opinion on the question. For aught that appears in the record, some other clause in the Constitution, or some law of Congress may have been relied on, and the mind of the court never called to the clause of the Constitution now assigned as error in this court." After stating the grounds upon which the decision in *Lawler* v. *Walker*, 14 How. 149, was placed, the court proceeded: "So in the case before us, the clause in the Constitution and the law of Congress should have been specified by the plaintiffs in error in the state court, in order that this court might see what was the right claimed by them, and whether it was denied to them by the decision of the state court."

In *Hoyt* v. *Shelden*, 1 Black, 518, 521, a writ of error to review the final judgment of a New York court, it was contended that full faith and credit were not given by that court, to certain legislative enactments and judicial proceedings in the courts of New Jersey, as required by the Constitution of

the United States. This court, again speaking by Chief Justice Taney, said : " But, in order to give this court the power to revise the judgment of the state court on that ground, it must appear upon the transcript, filed by the plaintiff in error, that the point on which he relies was made in the New York court, and decided against him ; and that this section of the Constitution was brought to the notice of the state court, and the right which he now claims here claimed under it. The rule upon this subject is clearly and fully stated in 18 How. 511, 515, *Maxwell* v. *Newbold,* as well as in many other cases to which it is unnecessary to refer. This provision of the Constitution is not referred to in the plaintiff's bill of complaint in the state court, nor in any of the proceedings there had. It is true, he set out the act of the legislature of New Jersey, the proceedings and decree of the chancery court of that State under it, and the sale of the property in dispute by the authority of the court, which, he alleges, transferred the title to the vendee, under whom he claims, and charges that the assignment set up by the defendants was fraudulent and void, for the reasons stated in his bill. But all of the matters put in issue by the bill and answers, and decided by the state court, were questions which depended for their decision upon principles of law and equity, as recognized and administered in the State of New York, and without reference to the construction or effect of any provision in the Constitution, or any act of Congress. This court has no appellate power over the judgment of a state court pronounced in such a controversy, and this writ of error must, therefore, be dismissed for want of jurisdiction."

If there has been any modification of the views expressed in the two cases just cited, it has been only in the particular that it is not always necessary to refer to the precise words or to the particular section of the Constitution, under which some right, title, privilege or immunity is claimed, and that it is sufficient if it appears affirmatively from the record that a right, title, privilege or immunity is specially set up or claimed under that instrument or under the authority of the United States.

The question was again examined in *Sayward* v. *Denny*, 158 U. S. 180, 183, 184, 186. It was stated in that case, the Chief Justice delivering the opinion of the court, that certain propositions must be regarded as settled, among which were that "the title, right, privilege or immunity must be specially set up and claimed at the proper time and in the proper way," and that "the right on which the party relies must have been called to the attention of the court, in some proper way, and the decision of the court must have been against the right claimed" — citing in support of the first of these propositions *Miller* v. *Texas*, 153 U. S. 535, and *Morrison* v. *Watson*, 154 U. S. 111, 115, and in support of the second proposition the above cases of *Hoyt* v. *Shelden* and *Maxwell* v. *Newbold*. The Chief Justice said: "The contention is that the result of the rulings and decisions of the trial court in these respects, as affirmed by the Supreme Court, was to hold plaintiff in error conclusively bound by the judgment rendered against Crawford in an action 'in which he was not a party and of which he had no notice'; and that this was in effect to deprive him of his property without due process of law, or to deny him the equal protection of the laws, and amounted to a decision adverse to the right, privilege or immunity of plaintiff in error under the Constitution of being protected from such deprivation or denial. But it nowhere affirmatively appears from the record that such a right was set up or claimed in the trial court when the demurrer to the complaint was overruled, or evidence admitted or excluded, or instructions given or refused, or in the Supreme Court in disposing of the rulings below. . . . We are not called on to revise these views of the principles of general law considered applicable to the case in hand. It is enough that there is nothing in the record to indicate that the state courts were led to suppose that plaintiff in error claimed protection under the Constitution of the United States from the several rulings, or to suspect that each ruling as made involved a decision against a right specially set up under that instrument."

In harmony with these views we said at the present term in *Chicago & Northwestern Railway Co.* v. *Chicago*, 164 U. S.

454, 457 : "It is assigned in this court for error that the judg-ment of the court of original jurisdiction had the effect to de-prive the railroad company of its property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States. But the record does not show that the company specially set up or claimed in the state courts or either of them any right under the Constitution of the United States. It does not appear that the atten-tion even of the trial court was called to the fact that the company, in any form or for any purpose, invoked the pro-tection of that instrument. Nor does it appear from the record that any Federal right was specially set up or claimed in the Supreme Court of the State."

Our attention is called by the plaintiffs in error to *Armstrong* v. *Athens County Treasurer*, 16 Pet. 281; *Bridge Proprietors* v. *Hoboken*, 1 Wall. 116, 140; *Chicago Ins. Co.* v. *Needles*, 113 U. S. 574, and *Des Moines Navigation Co.* v. *Iowa Homestead Co.*, 123 U. S. 552, as establishing the juris-diction of this court in the present case. Interpreting the general language in the opinions in some of these cases in the light of the facts presented by them, it is clear that no one of them supports our jurisdiction to reëxamine the judgment now before us.

In *Armstrong* v. *Treasurer* our jurisdiction was maintained upon the ground that the state court certified "on the record" that the validity of a statute of Ohio was drawn in question, on the ground of its repugnancy to the Constitution of the United States, and that the decision was against the validity of the statute. In *Bridge Proprietors* v. *Hoboken Co.* the court said that the true and rational rule was that "the court must be able to see clearly, from the whole record, that a certain pro-vision of the Constitution or act of Congress was relied on by the party who brings the writ of error, and that the right thus claimed by him was denied." It was held in that case that as the record showed that the state court had upheld a statute of New Jersey whose validity had been questioned as impair-ing the obligation of a contract, and that as, under the plead-ings, it could not have made the final judgment complained of

without sustaining the validity of that act, this court had jurisdiction to reëxamine that judgment. In *Chicago Life Ins. Co. v. Needles* it was said that, while the Supreme Court of Illinois did not, in terms, pass upon the claim that the statutes there in question were in derogation of rights and privileges secured by the Constitution of the United States, our jurisdiction could not be doubted, for the reason that the final judgment necessarily involved an adjudication of that claim. That language was used in a case in which it appeared from the record that the Federal right was specially set up and claimed in the inferior state court and reasserted in the Supreme Court of the State. In *Des Moines Navigation Co. v. Iowa Homestead Co.* the Federal right was specially set up, because it was claimed under a decree or judgment of a court of the United States, the validity of which was disputed on the ground that the courts of the United States had no jurisdiction of the suit in which it was rendered, and, therefore, no legal power or authority in the premises. It is manifest that none of these cases conflict with the views herein expressed.

Without further references to adjudged cases, we are of opinion that the general allegation or claim, in different forms, that the decree of the Butler County Circuit Court was passed against some persons who were at the time dead, and against others who were necessary parties but who had no notice of the proceedings, does not, within the meaning of section 709 of the Revised Statutes, specially set up a right or immunity under the Fourteenth Amendment of the Constitution of the United States, forbidding a State to deprive any person of his property without due process of law. If it appeared that the Supreme Court of the State regarded these general allegations as asserting such Federal right or immunity, and denied the claim so asserted, our jurisdiction could be sustained. But it does not so appear.

We are of opinion that this court is without jurisdiction to review the final judgment of the Supreme Court of Missouri.

*Writ of error dismissed.*