# MUTUAL LIFE INSURANCE COMPANY *v.* McGREW.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 109.   Argued January 15, 16, 1902.—Decided February 23, 1903.

To maintain a writ of error asserted under the third of the classes of cases enumerated in section 709, Rev. Stat., the right, title, privilege or immunity relied on must not only be specially set up or claimed, but (1) at the proper time, which is in the trial court whenever that is required by the state practice, as it is in California, and (2) in the proper way, by pleading, motion, exception, or other action, part or being made part, of the record, showing that the claim was presented to the court.

Where it is claimed that the decision of a state court was against a right, title or immunity claimed under a treaty between the United States and a foreign country and no claim under the treaty was made in the trial court and it is a rule of practice of the highest court of the State that it will not pass on questions raised for the first time in that court and which might and should have been raised in the trial court, the writ of error will be dismissed.

The mere pleading of a decree in a foreign country or of a statute of such country and the construction of the same by the courts thereof do not amount to specifically asserting rights under a treaty with that country.

Judicial knowledge cannot be resorted to to raise controversies not presented by the record.

The raising of a point in this court as to the faith and credit which should be given judicial proceedings of a foreign country, which ceased to be foreign before judgment was rendered in a state supreme court, but was not brought to the attention of that court, comes too late.

THIS is a writ of error to revise the judgment of the Supreme Court of the State of California, affirming a judgment of the Superior Court of the city and county of San Francisco in favor of Alphonsine McGrew and against the Mutual Life Insurance Company of New York.   132 California, 85.

The action was brought on a policy of insurance payable to Alphonsine C. McGrew, and in the amended answer to the complaint the recovery of a decree of divorce was averred, and it was alleged : " That under and by virtue of the Hawaiian law in force at the time said decree of divorce was granted and now in force, it is provided : ' When a divorce is decreed for the adultery or other offence amounting thereto, of the wife, the husband shall hold her personal estate forever, and he shall hold her real estate so long as they shall live ; and if he shall survive her, and there shall be issue of the marriage born alive, he shall hold her real estate for the term of his own life, as a tenant by the curtesy ; provided that the court may make such reasonable provision for the divorced wife out of any real estate that may have belonged to her, as it may deem proper.' That under and by virtue of the foregoing provision of law, and decree of divorce, all rights of the said Alphonsine C. McGrew in and to said policy of insurance did pass to the said Henri Golden McGrew and become his absolute property free and clear of any claims of the said Alphonsine C. McGrew, plaintiff herein, whatsoever."

The amended answer also averred that after McGrew's death, one Carter was duly appointed in Hawaii administrator of his estate; that as such administrator he commenced suit against the insurance company in a Circuit Court of Hawaii on the policy of insurance ; recovered judgment October 15, 1895, for the full amount ; that the Supreme Court of Hawaii affirmed the judgment, and subsequently denied an application for rehearing, and that the judgment was thereafter paid.

The trial court made findings of fact as follows :

" 1. On the 14th day of September, 1892, this defendant made, executed, and delivered to Henri G. McGrew, a certain policy of insurance, being the same policy mentioned in the complaint herein, wherein and whereby the said defendant promised and agreed to pay unto the plaintiff, Alphonsine McGrew, the sum of five thousand dollars ($5000.00), upon the death of the said Henri G. McGrew, during the continuance of said policy of insurance, provided said Alphonsine McGrew were living at the time of the death of said Henri G. McGrew, and upon

acceptance of satisfactory proof of the death of said Henri G. McGrew, during the continuance of said policy.

" 2. Henri G. McGrew died on the 22d day of October, 1894, in Honolulu, Hawaiian Islands, and said plaintiff survived him.

" 3. Said Henri G. McGrew, upon said 14th day of September, 1892, and continuously and up to the time of his death, was a resident of, and domiciled in, the Hawaiian Islands.

" 4. On the 9th day of February, 1895, plaintiff presented to said defendant satisfactory proof of the death of said Henri G. McGrew, and demanded of said defendant the payment of the sum of five thousand ($5000.00) dollars, under and in accordance with the terms of said policy of insurance, but defendant has never paid the same, or any part thereof.

" 5. Subsequent to the said 14th day of September, 1892, and prior to the 8th day of February, 1894, the said Henri G. McGrew became of unsound mind, and thereafter, upon due proceedings had, Charles L. Carter, residing in the city of Honolulu, was duly appointed the guardian of the person and estate of said Henri G. McGrew, an incompetent person, and continued to hold such office of guardian at the time of the filing of the libel of divorce, and the proceedings thereunder hereinafter mentioned.

" 6. On the 8th day of February, in the year 1894, Charles L. Carter, as guardian and on behalf of Henri G. McGrew, an incompetent person, filed in the Circuit Court of the first judicial circuit of the Republic of Hawaii, which said court has jurisdiction over said parties and over libels for divorce, a libel praying for a divorce from said plaintiff on the ground of her adultery; and thereafter, and on the 11th day of April, 1894, this plaintiff being then a resident of, and domiciled in, said Hawaiian Islands, appeared in said action and contested the same.

" 7. On the 23d day of August, 1894, a decision was rendered, and on the 24th day of August, 1894, a decree was signed in said cause by the said Circuit Court, dissolving the bonds of matrimony theretofore existing between said Henri G. McGrew and this plaintiff, upon the ground of the adultery of this plaintiff.

" 8. On the 5th day of April, 1894, this plaintiff left the Ha-

waiian Islands with the intention of not returning to said islands, but of coming to the State of California and of making her home in, and permanently residing in, said State. And thereafter, and in due course of her voyage from the Hawaiian Islands and in said month of April, this plaintiff arrived in the State of California, and with said intention above mentioned, thereupon took up her residence in, and made her home in, said State, and with said intention has ever since continuously remained in, and resided in, and made her home in, said State of California; and on the 23d and 24th days of August, 1894, was actually in, and residing in, said State, with the intention above mentioned of permanently residing and making her home in said State of California.

" 9. Prior to said 5th day of April, 1894, this plaintiff had been excluded by said Charles L. Carter, as such guardian, from the home of said Henri G. McGrew, and was by him thereafter prevented from returning, and has ever since and until the death of said Henri G. McGrew been by him prevented from returning to the same, and was, on said 5th day of April, excluded from said home by said guardian.

",10. On said 5th day of April, 1894, this plaintiff had no home, and has never since had a home in the Hawaiian Islands."

[Findings 11, 12, 13, 14, 16 and 17 referred to the filing of a bill of exceptions by Mrs. McGrew in the divorce suit, and the statute and rule of court of Hawaii in respect of the practice in relation thereto.]

" 15. The following Hawaiian law was in force in the Hawaiian Islands at the time said decree of divorce was granted, to wit: When a divorce is decreed for the adultery or other offence amounting thereto of the wife, the husband shall hold her personal estate forever."

And the court concluded as matter of law that the rights of Mrs. McGrew in and to the policy and the moneys due thereunder never passed to her husband, nor did the policy or money due thereunder ever become his property; and that the insurance company was indebted to Mrs. McGrew on said policy in the sum of $5000 and interest. Judgment was rendered ac-

cordingly October 11, 1897, and the case was carried to the Supreme Court of the State, and the record filed therein December 13, 1897. The judgment was affirmed February 28, 1901, and a petition for rehearing denied. 132 California, 85. This writ of error was allowed by the Chief Justice of that court.

The Supreme Court of California held that the construction given by the courts of the Republic of Hawaii to the statute of that republic that permitted an action for a divorce to be maintained by the guardian of an incompetent person should be accepted, although such was not the law of California, and that the judgment of divorce rendered in that republic, in pursuance of the statute so construed, should, by comity, be given effect by the courts of California as a decree of divorce ; that the statute of Hawaii declaring that, where a divorce is decreed for the adultery of the wife, the husband shall take her personal estate, could have no operation pending the suit for divorce, and not until after the entry of judgment; that Mrs. McGrew was bound by the decree of divorce in Hawaii, so far as the dissolution of the bond of matrimony was concerned, she having appeared to the action; that when a husband commences a suit for divorce, the wife may acquire a separate actual domicil by change of residence from one country to another pending the suit ; that Mrs. McGrew became domiciled in California prior to the entry of the decree, and that the statute of Hawaii declaring the forfeiture of her personal property to the husband could not operate in California to affect her, or to give to the husband a policy of insurance, which, by its terms, was payable to her, and which, at the time of the decree, was governed by the law of her domicil in California. No allusion whatever was made by the Supreme Court to the treaty between Hawaii and the United States.

The decisions of the Supreme Court of Hawaii are reported, *McGrew, a person non compos, by his Guardian, Charles L. Carter,* v. *Alphonsine McGrew,* 9 Hawaii, 475 ; *McGrew &c.,* v. *McGrew,* 10 Hawaii, 600 ; *Carter* v. *Mutual Life Insurance Company,* 10 Hawaii, 117; *S. C.,* 10 Hawaii, 559; *S. C.,* 10 Hawaii, 562.

In the opinion on the last hearing, December 16, 1896, the

court observed : " The company, not having brought the widow into court by interpleader, is in the unfortunate position of being subjected to two suits—one by the administrator here, the other by the widow in California. It must now rely on the assumption that the two courts will take the same view of the law." The court also considered the point that the statute in question, section 1331 of the Civil Code, was repealed by implication by the Married Women's act of 1888. But it held that the section was not inconsistent with that act, and that it might " be regarded as a special provision for a penalty or forfeiture in case of a divorce for the offence of adultery." And the court said that it was glad to know that the section had been repealed. Section 1331 was repealed May 12, 1896, Laws Hawaii, 1896, p. 70, act 24.

Article VIII of the treaty between the United States and the Kingdom of Hawaii was as follows :

" The contracting parties engage, in regard to the personal privileges, that the citizens of the United States of America shall enjoy in the dominions of his Majesty, the King of the Hawaiian Islands, and the subjects of his said Majesty in the United States of America, that they shall have free and undoubted right to travel and to reside in the states of the two high contracting parties, subject to the same precautions of police which are practiced towards the subjects or citizens of the most favored nations. They shall be entitled to occupy dwellings and warehouses, and to dispose of their personal property of every kind and description, . . . and their heirs or representatives, being subjects or citizens of the other contracting party, shall succeed to their personal goods, whether by testament or *ab intestato;* and may take possession thereof, either by themselves or by others acting for them, and dispose of the same. at will, paying to the profit of the respective governments, such dues only as the inhabitants of the country wherein the said goods are, shall be subject to pay in like cases. And in case of the absence of the heir and representative, such care shall be taken of the said goods as would be taken of the goods of a native of the same country in like case, until the lawful owner may take measures for receiving them. And if a

question should arise among several claimants as to which of them said goods belong, the same shall be decided finally by the laws and judges of the land wherein the said goods are. Where, on the decease of any person holding real estate within the territories of one party, such real estate would, by the laws of the land, descend on a citizen or subject of the other, were he not disqualified by alienage, such citizen or subject," etc. 9 Stat. 977.

*Mr. Julien T. Davies* and *Mr. Frederic D. McKenney* for plaintiff in error. *Mr. Edward Lyman Short, Mr. William H. Chickering* and *Mr. Warren Gregory* were on the brief.

I. The Federal questions were sufficiently claimed in the California courts by the pleadings, proof and assignments of error in the trial court. The mind of the state court was directed to the fact that a right protected by treaty was relied upon. *French* v. *Hopkins,* 124 U. S. 524; *Butler* v. *Gage,* 138 U. S. 61; *Sayward* v. *Denny,* 158 U. S. 184; *Powell* v. *Brunswick Co.,* 150 U. S. 400, 433; *Oxley Stave Co.* v. *Butler Co.,* 166 U. S. 653.

Submitting this case to these tests, it will be manifest that it can be readily inferred from the California opinion that that court was informed by contention of the plaintiff in error that a Federal right was intended to be asserted and denied the right so asserted. It would be preposterous in this case to claim that the California court proceeded in its determination without any thought that it was expected to decide a Federal question.

The question is, did the party bringing the case here intend to assert below a Federal right? *Michigan Sugar Co.* v. *Michigan,* 185 U. S. 113.

The Supreme Court of California itself construed the record as raising a Federal question. They say : "The defence is rather a remarkable one; it rests upon a decree of divorce rendered by a court of the Republic of Hawaii, a decree which could not have been obtained here; and upon an Hawaiian statute which has no force except by comity." As to definition of comity see *Barnett's Trusts,* 1902, 1 Ch. 858; *Fergusson's Will,* 1902, 1 Ch. 486.

This court has frequently taken jurisdiction where the judgment of a sister State is pleaded as *res adjudicata* in the state court, although no specification in so many words was made in the pleading that such judgment violates the faith and credit clause of the Constitution, Art. IV.

That is, the pleading was a sufficient compliance with the clause in § 709, " specially set up or claimed." *Bell* v. *Bell*, 181 U. S. 175 ; *Sweringen* v. *St. Louis*, 185 U. S. 45.

The answer shows that the courts of Hawaii subsequently determined in the action of *Carter* v. *Mutual Life Insurance Co.*, 10 Hawaii, 117, 570, that the decree referred to did operate upon the interest of Mrs. McGrew in this very policy of insurance, and that the administrator of her former husband's estate was entitled to recover upon it.

The California court refused to follow the Hawaiian laws and judges, and decided that Mrs. McGrew did not lose her beneficial interest by the divorce proceedings.

Thus the company would be compelled to pay the same policy twice, though paid for but once, notwithstanding the treaty, and Constitution properly prevent it. This treaty was "as much a part of the law of every State as its own local laws and constitution." *Hauenstein* v. *Lynham*, 100 U. S. 483, 490 ; *Hickie* v. *Starke*, 1 Pet. 98 ; *Murray* v. *Charleston*, 96 U. S. 442 ; *Capital City Dairy Company* v. *Ohio*, 183 U. S. 238 ; *Green Bay &c. Canal Co.* v. *Patten Paper Company*, 172 U. S. 58, 68 ; *Roby* v. *Colehour*, 146 U. S. 153, 159 ; *Bridge Proprietors* v. *Hoboken Cv.*, 1 Wall. 116. The decision of the alleged Federal question was necessary to the judgment rendered, and hence gives jurisdiction. *Brooks* v. *Missouri*, 124 U. S. 394, 400 ; *Armstrong* v. *Treasurer of Athens County*, 16 Peters, 281, 285 ; *Eureka Lake Company* v. *Yuba County*, 116 U. S. 410, 415 ; *Arrowsmith* v. *Harmoning*, 118 U. S. 194 ; *Furman* v. *Nichol*, 8 Wall. 44, 56 ; *Hickie* v. *Starke*, 1 Peters, 94 ; *Martin* v. *Hunter's Lessee*, 1 Wheat. 305, 355 ; *Craig* v. *State of Missouri*, 4 Peters, 410. The record shows a " complete " right under a treaty, and that the judgment of the court is in violation of that treaty. *Mayor &c.* v. *De Armas*, 9 Peters, 224 ; *Crowell* v. *Randell*, 10 Peters, 368.

The findings of the trial court and the admitted statement of facts upon which the case was tried, deal wholly with these Hawaiian judgments and Hawaiian law.

The following cases do not sustain contention of defendant in error : *Parmelee* v. *Lawrence,* 78 U. S. 38 ; *Brooks* v. *Missouri,* 124 U. S. 394 ; *Baldwin* v. *Kansas,* 129 U. S. 57 ; *Brown* v. *Massachusetts,* 144 U. S. 579 ; *Oxley Stave Co.* v. *Butler Co.,* 166 U. S. 653 ; *Water Co.* v. *Electric Co.,* 172 U. S. 488 ; *Chapin* v. *Fye,* 179 U. S. 129.

II. The Federal questions were, therefore, necessarily involved in the Supreme Court of California on appeal, and were fully presented there by counsel.

The rights of the insurance company under the treaty, and the errors of the trial court in its rulings thereon, were fully called to the attention of the appellate court in California, and specially set up and claimed there, and were there argued by counsel for both parties and were considered by the court. *New York Central Railroad Co.* v. *New York,* 186 U. S. 269, 273.

The record shows not only that the state appellate court could not escape deciding this treaty question, but it also shows that the treaty question was presented to the trial court and passed on by it when it decided such evidence to be immaterial and excluded it.

III. The treaty and constitutional point in question were involved in the decision of the Supreme Court of California and apply to this case. *Tullock* v. *Mulvane,* 184 U. S. 497. Raising the question on appeal is sufficient. *Sweringen* v. *St. Louis,* 185 U. S. 45 ; *Mutual Life* v. *Cohen,* 179 U. S. 262.

This court further has jurisdiction to determine whether the Supreme Court of California should not have applied section 1, article IV of the United States Constitution in regard to full faith and credit. *Keokuk &c. Bridge Co.* v. *Illinois,* 175 U. S. 633 ; *Dewey* v. *Des Moines,* 173 U. S. 193.

When the company claimed the protection of the treaty it claimed the protection of the Constitution. When the Constitution was extended to Hawaii while the California court had the case under advisement, the constitutional points were added to the treaty points, by operation of law, for the California

court was bound to take judicial notice of the Constitution as the supreme law. Pleading was a sufficient compliance with the clause in § 709, " specially set up or claimed." *Bell* v. *Bell*, 181 U. S. 175·; *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116, 142. The record shows that the public acts of Hawaii had an effect there not given them by the California court. *Lloyd* v. *Matthews*, 155 U. S. 227.

IV. The opinion of the Supreme Court of. California impliedly referred to the Federal question. This point, taken in connection with the others showing that the Federal question was sufficiently claimed and set up is conclusive against the motion to dismiss.

A treaty and constitutional right may be denied as well by evading a direct decision thereon as by positive action. *Chapman* v. *Goodnow*, 123 U. S. 540, 548 ; *Des Moines Nav. Co.* v. *Iowa Homestead Co.*, 123 U. S. 552, 555.

Raising the Federal question for the first time in the appellate state court, if it be there considered, or necessarily involved in the decision, gives the right of review in this court. *Missouri, Kansas, etc. Ry. Co.* v. *Elliott*, 184 U. S. 530 ; *Mallett* v. *North Carolina*, 181 U. S. 589, 592 ; *Erie R. R. Company* v. *Purdy*, 185 U. S. 148 ; *Maxwell* v. *Newbold*, 18 How. 511, 516. If the mind of the state court is directed to the fact that a right protected by the treaty is relied upon, it is sufficient. *Eastern Building Assn.* v. *Welling*, 181 U. S. 47.

V. The Federal question was presented a second time to the Supreme Court in the petition for rehearing which was denied, and such decision necessarily involved a second consideration of the Federal question by the state court.

This brief determination " motion denied " is not equivalent to " motion dismissed " without consideration but it involves judicial action on the merits of the matter presented. *Chapman* v. *Goodnow*, 123 U. S. 548; *Michigan Sugar Co.* v. *Michigan*, 185 U. S. 113 ; *Rothschild* v. *Knight*, 184 U. S. 339, 341 ; *King* v. *Cross*, 175 U. S. 396 ; *Chicago, Rock Island & Pacific* v. *Sturm*, 174 U. S. 710.

VI. Questions arose among several claimants, namely, Henri G. McGrew by his guardian, Charles L. Carter, Alphonsine Mc-

Grew, J. O. Carter, administrator of the estate of Henri G. Mc-Grew, deceased, as to which of them said policy belonged to, and the same were decided finally by the laws and judges of Hawaii, wherein the said policy was.

The decisions were that the policy belonged to Henri McGrew and his estate and the California court was bound under the treaty by the law as laid down by the Hawaiian judges and their decisions, and under the Constitution of the United States was bound to give full faith and credit to the divorce decree, the public act of Hawaii in regard to the effect of such decree, and the judgment in the administrator's action.

The general object of this particular clause of the treaty involved in this action was to provide that the laws and judges of the land wherein the goods were, were to decide finally to whom they belonged in any controversy as to their ownership. The broad scope of the treaty was that if any question arose in the courts of either country where the goods were between subjects or citizens of the respective countries, the decision of the courts of that country, whichever it might be, should be final.

The laws and judges of Hawaii had under the treaty power to decide finally to whom the policy belonged, because that was the land wherein the goods were. The policy was covered by the word "goods" in the treaty.

A liberal and not a restrictive construction of the rights to be claimed under it should be followed. _Shanks_ v. _Dupont_, 3 Pet. 242; _Hauenstein_ v. _Lynham_, 100 U. S. 483, 487, and cases cited; _Tucker_ v. _Alexandroff_, 183 U. S. 437.

The term "goods" is by no means limited to strictly tangible movables such as ordinary chattels, but in many cases it has been held to include such choses in action as policies, bonds, etc. _Dowdel_ v. _Hamm_, 2 Watts, 61, 65; _Tisdale_ v. _Harris_, 20 Pickering, 9; _Greenwood_ v. _Law_, 25 Atl. Rep. 134; _Terhune_ v. _Bray's Ex._, 16 N. J. Law, 53. _Kirtland_ v. _Hotchkiss_, 100 U. S. 491, 498, distinguished.

The _situs_ of the goods was in Hawaii, either because their actual location was there, or because they were enforceable there against the debtor, the Mutual Life. _Equitable Life_ v. _Brown_, 187 U. S. 308; _N. E. Life_ v. _Woodworth_, 111 U. S.

138; *Sulz* v. *M. R. F. L. Assn.*, 145 N. Y. 563; *Wyman* v. *Halstead*, 109 U. S. 654; Holland's Jurisprudence, 9th ed. 391; Wharton's Conflict of Laws, §§ 305–307. It is evident that the treaty selected not the *lex domicilii* but the *lex loci rei sitæ*, and the United States had power by the treaty to declare that the law of the domicil should not govern, and it is merely a question of what was the intention. *Eidman* v. *Martinez*, 184 U. S. 578, 581; *Cross* v. *United States Trust Co.*, 131 N. Y. 330; *Ennis* v. *Smith*, 14 How. 400, 424; *Dammert* v. *Osborn*, 141 N. Y. 564. Serious encroachments have been made upon the ancient maxim. *Green* v. *Van Buskirk*, 5 Wall. 307; *S. C.*, 7 Wall. 139; *Hervey* v. *Rhode Island Locomotive Works*, 93 U. S. 664; *Walworth* v. *Harris*, 129 U. S. 355; *Security Trust Company* v. *Dodd*, 173 U. S. 624, and cases there cited. "The same principle has been applied not only to tangible property but to credits and effects." *Tappan* v. *Merchants' National Bank*, 19 Wall. 490; *Savings Society* v. *Multnomah Co.*, 169 U. S. 421; *New Orleans* v. *Stempel*, 175 U. S. 309; *Bristol* v. *Washington Co.*, 177 U. S. 133; *Mager* v. *Grima*, 8 How. 490; Story's Conflict of Laws, §§ 379, 385; Minor, Conflict of Laws, § 121, *et seq.*; Wharton, Conflict of Laws, §§ 299, 309, 311.

The treaty has removed the danger of any collision between independent systems of law.

The administrator's action was within the treaty and the goods were in Hawaii. On the death of Henri McGrew, Carter, administrator, a subject or citizen of Hawaii, and the Mutual Life Insurance Company, a subject or citizen of the United States, were parties to a controversy as to whom the policy belonged to, it having already been decided in the divorce case, and the Hawaiian court decided that Alphonsine was a necessary party to the later suit.

The instant the Constitution of the United States went into effect, the Supreme Court of California was bound by it to give full faith and credit to the divorce decree and public acts of Hawaii and the judgment in the administrator's action, as well as by the treaty. *Ex parte Edwards*, 13 Hawaii, 32, 38; *Ex parte Ah Oi*, 13 Hawaii, 556.

The Constitution of the United States protected the company on account of the divorce decree. Civil Code, Hawaii, section 1331.

The Constitution of the United States required full faith and credit to be given to the decree in the divorce action in Hawaii. *Laing* v. *Rigney*, 160 U. S. 544; *Lynde* v. *Lynde*, 181 U. S. 186; *Bullock* v. *Bullock*, 57 New Jersey Law Reports, 508. The statute in question is not a penal statute in an international sense within the meaning of *Huntington* v. *Attrill*, 146 U. S. 657.

In the last case Mr. Justice Gray states that the question whether a statute of one State, which in some aspects may be called penal, is a penal law in the international sense, so that it cannot be enforced in the courts of another State, depends upon the question whether its purpose is to punish an offence against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act. *Boston M. R. R. Co.* v. *Hurd*, 108 Fed. Rep. 116, 119; *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265.

The Supreme Court of California was bound always by the treaty and after 1898 by the Constitution of the United States. 31 Stat. 143.

The Supreme Court of California was bound to take notice of the change in the operation of the supreme law of the land effected by the annexation of Hawaii and the extension of the Constitution thereto. *Pugh* v. *McCormick*, 14 Wallace, 361; *Fairfax* v. *Hunter*, 7 Cranch, 603, 627; *United States* v. *Peggy*, 1 Cranch, 103; *Whitehead* v. *Watson*, 19 La. Ann. 68; *Stutsman Co.* v. *Wallace*, 142 U. S. 293; *Price* v. *Nesbitt*, 29 Maryland, 264; *Turner* v. *Bryan*, 83 Maryland, 374; *Ferry* v. *Campbell*, 110 Iowa, 290.

This question is important in view of recent past and possible future annexations. But the question has been already decided. *Armstrong* v. *Carson's Executors*, 2 Dallas, 302.

The attempted change of domicil by Alphonsine could not deprive the Hawaiian court of jurisdiction over the contingent interest in the policy any more than it could change the grounds for the divorce itself. Jurisdiction once acquired cannot be

ousted by subsequent events. *Koppel* v. *Heinrichs*, 1 Barb. 450; *Tindall* v. *Meeker*, 1 Scamm. 137; *Hard* v. *Shipman*, 6. Barb. 631; *Upton* v. *N. J. So. R. R.*, 25 N. J. Eq. 375. The actual physical location of the goods was not changed.

The treaty should be construed liberally. *The Pizarro*, 2 Wheaton, 227; *United States* v. *Chong Sam*, 47 Fed. Rep. 885; *The Friendschaft*, 3 Wheat. 114; *The Venus*, 8 Cranch, 252; *State* v. *Blackmo*, 6 Blackf. (Ind.) 489; *Case* v. *Clarke*, 5 Mason, 70; *Poppenhauser* v. *India Rubber Co.*, 14 Fed. Rep. 707; *Burnham* v. *Rangeley*, 4 Fed. Cas. 775.

While this is not the case of a double payment to identically the same person, yet the principle that a construction requiring a double payment should not be adopted applies. *American Central Ins. Co.* v. *Hettler*, 37 Nebraska, 853; *Jardin* v. *Madeiros*, 9 Hawaii, 503; *Kolb* v. *Swann*, 68 Maryland, 521; *Matter of Howard*, 26 N. Y. Misc. 233; *Haggerty* v. *Amory*, 89 Massachusetts, 462, and cases cited.

VII. The laws and judges of Hawaii had the final decision of this controversy, and the Hawaiian proceedings and statutes were entitled to full faith and credit in California. *Hancock Bank* v. *Farnum*, 176 U. S. 643.

Titles, rights, privileges or immunities claimed under the Constitution, laws or treaties of the United States have been placed under the final guardianship of this court, on whatever question of law the same might depend. The United States Supreme Court will not compel this insurance company to pay a second time to the wife of the deceased the amount of this policy, when it has already paid the amount thereof for the benefit of the son of the deceased on judgments based on Hawaiian law which the proper rules of international law, the treaty with the United States and the Constitution of the United States say shall be final.

*Mr. J. Hubley Ashton* for defendant in error. *Mr. Richard Bayne* and *Mr. H. G. Platt* were on the brief.

I. There is no Federal question in this case, because plaintiff in error did not claim in or for itself any right under the treaty. Plaintiff in error here does not claim in or for itself

any right under the treaty with Hawaii, or any right which is protected by that treaty, but only that a third person has a right under that treaty, or which is protected thereby, and that, by virtue of such alleged right, such third person, and not the defendant in error, is the owner of, and entitled to the subject matter of this action, to wit, said policy of insurance and the money due thereon ; and therefore, that said third person and not the defendant in error, is entitled to have and recover the amount of said policy from plaintiff in error. Hence, plaintiff in error is not asserting a right *in itself* under the treaty, but in a *third person;* which, if established, might be a defence in the state court, but presents no Federal question. *Owings* v. *Norwood,* 5 Cranch, 344; *Verden* v. *Coleman,* 1 Black, 472 ; *Henderson* v. *Tennessee,* 10 How. 323; *Hale* v. *Gaines,* 22 How. 160 ; *Giles* v. *Little,* 134 U. S. 650 ; *Tyler* v. *Judges,* 179 U. S. 407.

II. This writ should be dismissed for want of jurisdiction in this court to entertain it, because no Federal question was specially set up or claimed in the California courts. *Water Power Co.* v. *Columbia,* 172 U. S. 488 ; *Yazoo* v. *Adams,* 180 U. S. 14. These cases disposed of the contention of plaintiff in error that a Federal question under clause 3 of § 709 can be raised by inference or implication. *Oxley Stave Co.* v. *Butler Co.,* 166 U. S. 655 ; *Green Bay* v. *Patten Paper Co.,* 172 U. S. 67.

A right, title, privilege or immunity under the Constitution or laws of the United States, or under a treaty, must be especially set up or claimed at the proper time and in the proper way, *i. e.,* specially set up in the trial court. *Spies* v. *Illinois,* 123 U. S. 181; *Baldwin* v. *Kansas,* 129 U. S. 57; *Miller* v. *Texas,* 153 U. S. 538 ; *Parmalee* v. *Lawrence,* 11 Wall. 39.

It cannot be first set up in the argument in the state Supreme Court. *Oxley Stave Co.* v. *Butler Co.,* 166 U. S. 655 ; *Maxwell* v. *Newbold,* 18 How. 516. This court did not mean that such a question can be presented to the state Supreme Court only in the oral or printed arguments. *Baldwin* v. *Kansas,* 129 U. S. 57 ; *Zadig* v. *Baldwin,* 166 U. S. 488 ; *Sayward* v. *Denny,* 158 U. S. 183 ; *Parmalee* v. *Lawrence,* 11 Wall. 49 ; *Gulf, etc., R. R. Co.* v. *Hewes,* 183 U. S. 66 ; *Loeb* v. *Columbia,* 179 U. S. 485 ;

*Capital Bank* v. *Cadiz,* 172 U. S. 431 ; *Mallett* v. *North Carolina,* 181 U. S. 592.    Also by analogy, under § 5 of the judiciary act of March 3, 1891, *W. U. Tel. Co.* v. *Ann Arbor,* 178 U. S. 243 ; *Ansbro* v. *United States,* 159 U. S. 697 ; *Muse* v. *Arlington,* 168 U. S. 435.

The writ of error must be dismissed, unless it is shown that the particular Federal question relied upon, to wit, a right under the treaty, was specially set up or claimed at the proper time, and in the proper way, or that this case is one of the rare exceptions to the rule laid down in *Water Power Co.* v. *Columbia, supra.*    This court has repeatedly held that it will take jurisdiction only when a Federal question was *actually raised and decided,* not when it simply *might have been raised.    Maxwell* v. *Newbold,* 18 How. 511 ; *Crowel* v. *Randell,* 10 Pet. 368, 398.; *Brown* v. *Colorado,* 106 U. S. 639 ; *Hagar* v. *California,* 154 U. S. 639 ; *Chouteau* v. *Gibson,* 111 U. S. 200.    *Bell* v. *Bell,* 181 U. S. 175, and other cases on brief of plaintiff in error distinguished.

III.  No Federal question was involved in the decision of the California court, nor is any Federal question apparent in the record.    It not only does not appear from the record that the treaty in question was in any way involved in the decision, but on the contrary, it appears from the record that it was not so involved.

It was intended to protect only the citizens of the United States and the subjects of the Hawaiian kingdom in disputes between such citizens on the one side and such subjects on the other side, whereas the record shows or attempts to show that both the defendant in error and her husband (the only claimants to this policy of insurance) were both citizens of the Republic of Hawaii (successor to the kingdom of Hawaii) at the time of the beginning of the divorce proceedings.

The policy of insurance is not covered by the terms of the treaty.    The term " goods " was clearly not intended to cover intangible property, such as a policy of insurance, as it cannot be said to be in any land, but must be in the owner thereof, whereas a horse, a piano, a barrel of sugar, necessarily has a corporeal situs, which may be different from the situs of its owner.

16 Am. & Eng. Ency. of Law, 843; *People* v. *Eastman*, 25 California, 604; *Estate of Fair*, 128 California, 612; *Kirtland* v. *Hotchkiss*, 100 U. S. 498. *N. E. Life* v. *Woodworth*, 111 U. S. 138, distinguished. The decision of the state court that the domicil of the defendant in error at the time of the divorce was in California, though a non-Federal question, is in line with the decisions of this court. *Anderson* v. *Watt*, 138 U. S. 706; *Cheever* v. *Wilson*, 19 Wall. 108, 123, 124. *Mutual Life* v. *Cohen*, 179 U. S. 262; *Huntington* v. *Attrill*, 146 U. S. 664, distinguished.

Mr. Chief Justice Fuller, after making the foregoing statement, delivered the opinion of the court.

Appellate jurisdiction was conferred on this court by the twenty-fifth section of the judiciary act of 1789, over final judgments and decrees in any suit in the highest court of law or equity of a State in which a decision in the suit could be had, in three classes of cases: The first class was where the validity of a treaty or statute of, or an authority exercised under, the United States, was drawn in question, and the decision was against their validity; the second was where the validity of a statute of, or an authority exercised under, any State, on the ground of their being repugnant to the Constitution, treaties or laws of the United States, was drawn in question, and the decision was in favor of their validity; and the third was "or where is drawn in question the construction of any clause of the Constitution, or of a treaty, or statute of, or commission held under the United States, and the decision is against the title, right, privilege or exemption specially set up or claimed by either party, under such clause of the said Constitution, treaty, statute or commission." 1 Stat. 73, 85, c. 20, § 25.

By the second section of the act of February 5, 1867, 14 Stat. 385, 386, c. 28, the original twenty-fifth section was reënacted with certain changes, and, among others, the words just quoted were made to read: "Or where any title, right, privilege, or immunity is claimed under the Constitution, or any treaty or statute of or commission held, or authority exercised under the United States, and the decision is against the title, right, priv-

ilege, or immunity specially set up or claimed by either party under such Constitution, treaty, statute, commission, or authority." And this was reproduced in § 709 of the Revised Statutes. The change from the drawing in question of the construction of a clause of the Constitution, or of a treaty, statute, or commission, to the claim of a right under the Constitution, treaty, statute, commission, or authority, emphasized the necessity that the right must be specially set up, and denied.

In *Baltimore & Potomac Railroad Company* v. *Hopkins*, 130 U. S. 210, the distinction between the denial of validity and the denial of a title, right, privilege or immunity specially set up or claimed, is pointed out, as well as the distinction between the construction of a statute or the extent of an authority and the validity of a statute or of an authority.

Our jurisdiction of this writ of error is asserted under the third of the classes of cases enumerated in § 709, and it is thoroughly settled that in order to maintain it, the right, title, privilege or immunity relied on must not only be specially set up or claimed, but at the proper time and in the proper way.

The proper time is in the trial court whenever that is required by the state practice, in accordance with which the highest court of a State will not revise the judgment of the court below on questions not therein raised. *Spies* v. *Illinois*, 123 U. S. 131; *Jacobi* v. *Alabama*, 187 U. S. 133; *Layton* v. *Missouri*, 187 U. S. 356; *Erie Railroad Company* v. *Purdy*, 185 U. S. 148.

The proper way is by pleading, motion, exception, or other action, part, or being made part, of the record, showing that the claim was presented to the court. *Loeb* v. *Trustees*, 179 U. S. 472, 481. It is not properly made when made for the first time in a petition for rehearing after judgment; or in the petition for writ of error; or in the briefs of counsel not made part of the record. *Sayward* v. *Denny*, 158 U. S. 180; *Zadig* v. *Baldwin*, 166 U. S. 485, 488. The assertion of the right must be made unmistakably and not left to mere inference. *Oxley Stave Company* v. *Butler County*, 166 U. S. 648.

If the highest court of a State entertains a petition for rehearing, which raises Federal questions, and decides them, that will be sufficient; *Mallett* v. *North Carolina*, 181 U. S. 589; or

if the court decides a Federal question which it assumes is distinctly presented to it in some way. *Home for Incurables* v. *New York*, 187 U. S. 155 ; *Sweringen* v. *St. Louis*, 185 U. S. 38, 46.

Jurisdiction may be maintained where a definite issue as to the possession of the right is distinctly deducible from the record and necessarily disposed of, but this cannot be made out by resort to judicial knowledge. *Powell* v. *Brunswick County*, 150 U. S. 433 ; *Mountain View Mining & Milling Company* v. *McFadden*, 180 U. S. 533 ; *Arkansas* v. *Kansas and Texas Coal Company*, 183 U. S. 185.

Counsel by their specification of errors, under rule 21, assert the Federal questions to be that the decision of the Supreme Court of California was against a title, right, privilege or immunity claimed by plaintiff in error under the treaty between the United States and Hawaii. And that the decision was in contravention of section 1 of Article IV of the Constitution.

1. We do not find that any claim under the treaty was made in the trial court, and the rule of practice of the Supreme Court of California is that it will not pass on questions raised for the first time in that court, and which might and should have been raised in the trial court. *Stoddard* v. *Treadwell*, 29 California, 281 ; *King* v. *Meyer*, 35 California, 646 ; *Deady* v. *Townsend*, 57 California, 298 ; *Williams* v. *McDonald*, 58 California, 527 ; *Anderson* v. *Black*, 70 California, 226, 231.

Neither the pleading of the decree of divorce nor of the statute of Hawaii providing for the forfeiture of Mrs. McGrew's rights in the policy of insurance, as construed by the Supreme Court of Hawaii, nor of both together, amounted to specially asserting any right under the treaty. Those averments did not assert that claim in the trial court in such manner as to bring it to the attention of that court, nor indeed, to show that any right under the treaty was present in the mind of counsel.

To give them that effect would be in the teeth of our decision in *Oxley Stave Company* v. *Butler County*, 166 U. S. 648, and numerous other decisions. That case involved a decree, in respect of which there was a general allegation that it was

rendered against dead persons, as well as in the absence of necessary parties who had no notice of the suit ; and we held that such general allegations did not meet the statutory requirement that the final judgment of a state court may be reexamined here if it denies some title, right, privilege, or immunity " specially set up or claimed " under the Constitution or authority of the United States. Mr. Justice Harlan said (p. 655) : " This statutory requirement is not met if such declaration is so general in its character that the purpose of the party to assert a Federal right is left to mere inference. It is the settled doctrine of this court that the jurisdiction of the Circuit Courts of the United States must appear affirmatively from the record, and that it is not sufficient that it may be inferred argumentatively from the facts stated. . . . Upon like grounds the jurisdiction of this court to reëxamine the final judgment of a state court cannot arise from mere inference, but only from averments so distinct and positive as to place it beyond question that the party bringing a case here from such court intended to assert a Federal right."

This also disposes of the suggestion that the offering in evidence of the judgment in the suit by the administrator, and of evidence of its payment, raised a Federal question under the treaty, for no such ground was taken in relation to that evidence, to say nothing of the fact that Mrs. McGrew was not a party to that suit.

In the bill of exceptions there is an enumeration of certain objections to the entry of judgment and certain errors of law alleged to have occurred during the trial, and to have been excepted to by defendant, which embraces the objection that the decision of the trial court was against law because, among other things, the findings of fact did not determine the issues raised by the allegation in the answer quoted in the statement preceding this opinion, and that the court erred in sustaining the objection of plaintiff to the introduction of evidence of payment by the company to the administrator of the amount due on the policy. But there is no reference to the treaty, and all this no more set up the claim than the answer itself.

In fact, the question was not even raised in the Supreme

Court, though, if so, the court was not then bound to regard it. Reference was made in the briefs in the Supreme Court to the treaty, but those references did not specially set up or claim any right as secured by the treaty, nor were the briefs made part of the record by any certificate or entry duly made, and our attention has not been called to any statute or rule of court in California making them such.

In the petition for rehearing it was said that the treaty made the decision in *Carter* v. *Insurance Company*, 10 Hawaii, 117, controlling, and if that could be considered as a compliance with § 709, which we do not think it could, it came too late, and the petition was denied without an opinion. In doing so that court adhered to the usual course of its judgments, and its action cannot be revised by us. If the Supreme Court of California had seen fit on that petition to entertain the contention of plaintiff in error as asserting a Federal right, and had then decided it adversely, the case would have occupied a different position.

Where a state court refuses to give effect to the judgment of a court of the United States, rendered upon a point in dispute, and with jurisdiction of the case and the parties, it denies the validity of an authority exercised under the United States; and where a state court refuses to give effect to the judgment of a court of another State, it refuses to give full faith and credit to that judgment. The one case falls within the first class of cases named in § 709 and the other within the third class.

Where a judgment of another State is pleaded in defence, and issue is made upon it, it may well be ruled that that sets up a right under the third subdivision, because the effect of the judgment is the only question in the case, but here the plea of the decree of divorce and the statute did not necessarily suggest or amount to a claim under the treaty. They were properly admitted in evidence under the state law for what they might be worth as a defence, but that did not involve the assertion of an absolute right under the treaty.

The Supreme Court of Hawaii in its second opinion in the administrator's case said that the company, not having brought Mrs. McGrew in by interplea, must rely on the courts of Cali-

fornia taking the same view that the courts of Hawaii did, but did not intimate that the courts of California were compelled by treaty to take that view.

Nor can this failure to claim under the treaty be supplied by judicial knowledge. We so held in *Mountain View Mining and Milling Company* v. *McFadden*, 180 U. S. 533, where we ruled that judicial knowledge could not be resorted to to raise controversies not presented by the record; and Professor Thayer's Treatise on Evidence was cited, in which, referring to certain cases relating to the pleadings and matters of record, it was said " that the right of a court to act upon what is in point of fact known to it must be subordinate to those requirements of form and orderly communication which regulate the mode of bringing controversies into court, and of stating and conducting them." *Arkansas* v. *Kansas and Texas Coal Company*, 183 U. S. 185, 190.

That rule must necessarily govern us in passing on the question of our appellate jurisdiction under § 709.

The Supreme Court of California held that the Hawaiian statute had no force in California " except by comity ;" accorded full effect to the decree of divorce as dissolving the bond of matrimony, but decided that Mrs. McGrew was not affected by the statute because she was not domiciled in Hawaii, and was domiciled in California, when that decree was rendered, and when the statute could have operated if she had been domiciled in Hawaii ; and that the statute " had no operation upon her or her personal property here ; for the law which governs personal property is the law of the domicil." As to whether a Federal question was involved at all, see *Roth* v. *Ehman*, 107 U. S. 319 ; *Roth* v. *Roth*, 104 Illinois, 35 ; Württemberg Treaty, 1844, Comp. Treaties, (1899,) 656.

It is argued that by the judgment against the company in favor of McGrew's administrator, the Hawaiian courts had adjudicated that Mrs. McGrew's title passed to the administrator. But Mrs. McGrew was not a party to that action, and was not bound by it, so that it could be pleaded against her. The insurance company did not litigate the question of ownership on her behalf and was in no way authorized to represent

her. In any point of view we return to the contention that it was in virtue of the treaty that the California courts were obliged to accept the Hawaiian decisions, and the record fails to show that a right or title was set up thereunder.

2. The second question indicated by plaintiff in error is that the decision was in conflict with § 1 of Article IV of the Constitution, providing that full faith and credit in each State shall be given to the public acts, records and public proceedings of every other State, as carried out by § 905 of the Revised Statutes, because it is insisted that prior to the decision this constitutional provision applied to Hawaii, and should be regarded as an enlargement of and connected with the alleged claim of right under the treaty. But an alleged right under a treaty between two foreign nations is inconsistent with an alleged right arising under the Federal Constitution, and as a right under the Constitution it was not at any time or in any way brought to the attention of the state courts. The judgment of the trial court was rendered October 11, 1897. The resolutions of annexation were passed July 7, 1898. The act to provide a government for Hawaii was passed April 30, 1900. By this act it was provided that the laws of Hawaii, not inconsistent with the Constitution and laws of the United States, or the provisions of the act, should remain in force, subject to repeal or amendment, but the act forfeiting the wife's property was repealed May 12, 1896. Laws Hawaii, 1896, p. 70.

The judgment of the Supreme Court of California was rendered February 28, 1901, and we cannot retain jurisdiction on the ground of the assertion of a Federal right which did not exist when the judgment was rendered in the trial court, and which was not brought to the attention of the highest court of the State in any way whatever.

*Writ of error dismissed.*

MR. JUSTICE PECKHAM took no part in the consideration and disposition of this case.

MR. JUSTICE WHITE dissented.