# DE LAMAR'S NEVADA GOLD MINING COMPANY *v.* NESBITT.

ERROR TO THE SUPREME COURT OF THE STATE OF NEVADA.

No. 152.    Argued March 1, 1900. — Decided April 30, 1900.

The fact that in a state court plaintiff and defendant make adverse claims to a mining location under the mining laws of the United States (Rev. Stat. § 2325), does not of itself present a federal question within the meaning of Rev. Stat. § 709.

Where the plaintiff based his right to recover upon an act of Congress suspending the forfeiture of mining claims for failure to do the required amount of work, and the decision of the court was in favor of the right claimed by him under this statute, the defendant is not entitled to a writ of error from this court to review such finding.

THIS was a suit begun in the District Court for the Fourth Judicial District of Nevada by Nesbitt as part owner of the Fraction mine, against one William Davidson, the alleged locator of the Sleeper mining claim, covering the same ground as the Fraction mine, to quiet plaintiff's title and that of his co-tenants to the Fraction mine, and to recover a money judgment against the defendant.

The complaint alleged that the plaintiff and his coöwners were tenants in common, and since May 15, 1892, had been in possession of the Fraction mining claim, pursuant to the laws of the United States, and that the defendant also claimed a right to possession upon the alleged location of a certain mining claim called by him the Sleeper mine; that such location was made subsequent to the location of the Fraction mine, and that the plaintiff had protested in the land office at Carson City against the issuance of a patent to the defendant.

The answer denied the ownership and possession of the plaintiff of the Fraction mine, and alleged as a defence the invalidity of the proceedings under which Nesbitt and his co-tenants had acquired the titles of the original locators to the Fraction mine.

The case came on for trial before the court without a jury, and resulted in a judgment for the plaintiff, whereby it was decreed that the title of plaintiff and his co-tenants to the Fraction mine be quieted, and the claim of the defendant to that portion of the Sleeper mine embraced within the boundary lines of the Fraction mine, be rejected; with a further decree for the recovery of certain incidental fees and costs. Upon motion for a new trial, it was ordered that De Lamar's Nevada Gold Mining Company be substituted as defendant in the place of Davidson, deceased, and that the motion for a new trial be overruled. Defendant appealed to the Supreme Court of the State, which affirmed the judgment. 52 Pac. Rep. 609. Whereupon it sued out a writ of error from this court.

*Mr. Jackson H. Ralston* and *Mr. William M. Stewart* for plaintiff in error.

*Mr. Walter A. Johnston* and *Mr. George S. Sawyer* for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

Defendant, known as De Lamar's Nevada Gold Mining Company, (hereinafter referred to as the mining company,) claims title to the property in question through an application filed by Davidson in the land office at Carson City, in pursuance of Rev. Stat. § 2325, for a patent to the Sleeper mine, against the issue which patent plaintiff Nesbitt filed an adverse claim as to so much of the Sleeper mine as was embraced within the boundaries of the Fraction mine.

Plaintiff Nesbitt took title to the Fraction mine through a location made May 12, 1892, by W. De Beque, H. Stevens and A. Borth, who, it appeared, performed all the acts required to make a valid location. Plaintiff claimed that he and George Nesbitt, his brother, had acquired all the right, title and interest of De Beque and Stevens to this mine through certain judgments recovered in a justice's court against De Beque and Stevens, upon which executions had been issued, and a sale made to the Nesbitt brothers of their interests in the Fraction mine. This left the Nesbitts and Borth the owners of that mine as tenants in common. The court held these judgments to be void, but admissible for the purpose of showing or tending to show color of title and adverse possession in the Nesbitts and Borth. It further appeared that the Nesbitts and Borth did assessment work in each of the years 1895, 1896 and 1897 to the full amount required by law, (§ 2324;) that no work was done in either of the years 1893 and 1894, but that the Nesbitt brothers, in December of each of said years, had a notice recorded in the county recorder's office, where the original notice of the location of the Fraction mine was filed, declaring their intention in good faith to hold and work the mine. Meantime, however, the Sleeper mine was located January 1, 1895, the boundaries of which took in the Fraction mine.

The Supreme Court held the vital question to be whether the notices which the Nesbitt brothers caused to be recorded of their intention to hold and work the mine had the legal effect of saving it from being subject to a relocation by Davidson. Revised Statutes, § 2324, provides that until a patent has been issued upon a mining claim previously located, "not less than one hundred dollars' worth of labor shall be performed or improvements made during each year," and that "upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made." But, owing probably to the stress of the financial panic then prevailing, Congress passed on November 3, 1893, an act, 28 Stat. 6, c. 12, providing that the requirements of section 2324 be suspended for that year, "so that no mining claim which has been regularly located and recorded as required by the local laws and mining regulations shall be subject to forfeiture for the non-performance of the annual assessment for the year 1893," provided a notice of an intention to hold and work the claim be filed in the proper office. This act was extended to the year 1894 by a subsequent statute. Act of July 18, 1894, c. 142, 28 Stat. 114. Plaintiff relied upon these statutes, and the court held that, the Nesbitt brothers and Borth having had the notice required by the statutes recorded, under an agreement between themselves recognizing each other as coöwners and tenants in common, and under the honest belief of all three that the Nesbitt brothers had legally acquired all the interest of De Beque and Stevens by virtue of the sale made under these judgments, the mine had not been forfeited, and was not subject to relocation when the location of the Sleeper mine was made, and therefore that the location of such mine was invalid, so far as it covered the Fraction mining claim.

From this summary of the pleadings and findings of the court, it is clear that the defendant set up no right, title, privilege or immunity under a statute of the United States, the decision of which was adverse to it in that particular. The mere fact that the mining company claimed title under a location made by Davidson under the general mining laws of the United States,

Rev. Stat. § 2325, was not in itself sufficient to raise a Federal question, since no dispute arose as to the legality of such location, except so far as it covered ground previously located, or as to the construction of this section.    We have repeatedly held that to sustain a writ of error from this court something more must appear than that the parties claim title under an act of Congress.

The subject is fully discussed and the prior authorities cited in the recent case of *Blackburn* v. *Portland Gold Mining Company*, 175 U. S. 571, which was also a contest between rival claimants of a mine under sections 2325 and 2326.    It was held that the provision in section 2326 for the trial of adverse claims to a mining patent " by a court of competent jurisdiction," did not in itself vest jurisdiction in the Federal courts, although, of course, jurisdiction would be sustained, if the requirements of amount and diverse citizenship existed ; and that the judgment of the Supreme Court of the State in such case could not be reviewed in this court simply because the parties were claiming rights under a Federal statute.    A like ruling was made in the still later case of *Florida Central & Peninsular Railroad* v. *Bell*, 176 U. S. 321.    See also *California Powder Works* v. *Davis*, 151 U. S. 389.

If the law were otherwise, then every land case wherein one of the parties claimed title, either immediately or remotely through a patent of the United States, would present a Federal question; and as most of the land titles in the Western States of this country are traceable back to a right under the laws of the United States, every such case might be held reviewable by this court on writ of error.    This position, of course, is untenable.    If the fact that the plaintiff takes title directly or indirectly from the United States be insufficient to create a case " arising under the Constitution or laws of the United States " within the meaning of the jurisdictional act of 1888, much less does it make one of a " title, right, privilege or immunity." claimed under a statute of the United States, an adverse decision of which by the highest court of a State entitles the injured party under Rev. Stat. sec. 709 to a writ of error from this court.    To raise a Federal question the right must be one claimed

under a particular statute of the United States, the validity, construction or applicability of which was made the subject of dispute in the state court; and the decision upon such statute must have been adverse to the plaintiff in error. No Federal question was presented by the pleadings in the case, and the whole gravamen of defendant's argument was, not the denial to it of any right under the mining laws of the United States, but the invalidity of the proceedings under which the Nesbitt brothers had acquired the interest of De Beque and Stevens in the Fraction mine.

There was undoubtedly a Federal question raised in the case, but it was raised by the plaintiff Nesbitt, who based his right to recover upon the acts of Congress of November 3, 1893, and July 18, 1894, suspending the forfeiture of mining claims for failure to do the required amount of work. The decision of the court, however, was in favor of, and not against, the right claimed under the statute, and of this construction the plaintiff in error is in no position to take advantage, as it made no claim under those statutes. This subject was considered in the case of *Missouri* v. *Andriano*, 138 U. S. 496, in which the contest was between rival claimants to the office of sheriff. Respondent relied upon the fact that he had received a majority of the votes cast at a popular election for the office. Relator claimed the election to be void under the state constitution, which declared that no one should be elected or appointed to office who was not a citizen of the United States. Respondent admitted his foreign birth, but claimed that, under Rev. Stat. sec. 2172, he became a citizen by the naturalization of his father. The decision of the court was in his favor, and it was held that the *relator* had no right to a review of the question in this court, although if the judgment had been adverse to the claim of the respondent there would have been no doubt of *his* right to a writ of error. It was said that the right or privilege must be personal to the plaintiff in error, and that he was not entitled to a review, where the right or privilege was asserted by the other party, and the decision was in favor of that party and adverse to himself. It is manifest that the object of section 709 was not to give a right of review wherever the validity of an act of

Congress was drawn in question, but to prevent States from frittering away the authority of the Federal government by limiting too closely the construction of Federal statutes. Hence the writ of error will only lie where the decision is adverse to the right claimed. To the same effect are *Dower* v. *Richards*, 151 U. S. 658, 666; *Sayward* v. *Denny*, 158 U. S. 180; *Jersey City & Bergen Railroad* v. *Morgan*, 160 U. S. 288; *Rae* v. *Homestead Loan & Guaranty Co.*, 176 U. S. 121; *Abbott* v. *Tacoma Bank*, 175 U. S. 409.

Except so far as the case under consideration required a construction of the above-mentioned acts of Congress suspending the forfeiture of mining claims, the questions were purely of a local nature, and not subject to review in this court.

There is no Federal question presented by the record in this case, and it must therefore be

*Dismissed.*

Mr. Justice McKenna dissented.