## SWERINGEN *v.* ST. LOUIS.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 187.   Argued March 4, 5, 1902.—Decided April 7, 1902.

The question involved in this case upon the merits is, in substance, whether the plaintiff is entitled to the alluvion caused by the recession of the Mississippi River to the extent of many hundred feet east of the point where it flowed in 1852, at the time when the plaintiff's predecessor took title to the property by virtue of a patent from the United States. The trial court held she was, and the Supreme Court of the State of Missouri held she was not. In the opinion of this court the case involves no Federal question, and it is dismissed on the ground of lack of jurisdiction.

THE plaintiff in error, being the plaintiff below, obtained judgment in the state Circuit Court for the city of St. Louis for the recovery of certain land described in the judgment. Upon appeal to the Supreme Court of the State of Missouri this judgment was reversed, 151 Missouri, 348, and the plaintiff has brought the case here by writ of error.

The action was ejectment for land described in the petition, which also set up a claim for the rents and profits. The answer of the city denied all the allegations of the petition, set up adverse possession for ten years and acquiescence on the part of the plaintiff in the possession and use of the premises by the city as and for a public wharf. The property described in the

petition is situate in the city of St. Louis, and is bounded on the east by the Mississippi River. The parties went to trial before the court, a jury being waived, and after the evidence was in, the issues were found in favor of the plaintiff, although she recovered judgment for but a portion of the property described in her petition, the portion for which she recovered being part of a public wharf of the city running along the west line of the river, and being ninety feet along the line of the wharf from north to south, and running back its whole depth from the east line on the river to its rear or western line.

The question involved in the case upon the merits is in substance whether the plaintiff is entitled to the alluvion caused by the recession of the Mississippi River, to the extent of many hundred feet east of the point where it flowed in 1852, at the time when the plaintiff's predecessor took title to the property by virtue of a patent from the United States called the "Labeaume patent." The trial court held she was and the Supreme Court held she was not.

On the trial the plaintiff offered in evidence as the source of her title a patent from the United States to Labeaume, dated in 1852. It was objected to as not tending to support the issues in the case and as not showing plaintiff's grantor a riparian owner. The objection was overruled and the patent received in evidence. It recites the proceedings which preceded the issuing of the patent, from which recitals it appears a concession was made of the land described, by the lieutenant governor of the Spanish province of Upper Louisiana, July 15, 1799, and a survey thereafter made, and the proceedings confirmed in accordance with the acts of Congress relating to lands in the province named, approved respectively March 2, 1805, and March 3, 1807, and after some other recitals a description of the land conveyed is set forth, which commences as follows:

"Begin at a stake set on the right bank of the Mississippi River between high and low-water mark and on the extension line produced eastwardly from Labeaume's southern ditch, the lower and most eastern corner of this survey, and the upper and most northern corner of the survey of Joseph Brazeau, numbered three thousand three hundred and thirty-two," etc.

Then follow in the patent what amounts to several printed pages, giving in detail the courses and distances of the out-boundaries of the land described in the patent, from the south-eastern corner along to the western limit, thence towards the north and thence back towards the east until the description is brought to the northeastern corner of the survey, which is also a corner of the city of St. Louis, being the northern termination of the northwestern boundary line thereof. This corner is marked " F " on the plat accompanying the patent, and the description then proceeds to give the eastern line of the grant parallel with the Mississippi River, and commences that line in the following language : " From the corner of ' F ' down the right bank of the Mississippi River, with the meanders thereof, between high and low-water mark, south nine degrees east," etc. The description then goes on with six or eight different courses and distances, altering with the meanders of the river, down " to the place of beginning."

It appears that the east boundary line of the land described in this patent was at the time of the execution of the patent, in 1852, several hundred feet west of the waters of the river, and at the present time is about fifteen hundred feet west thereof. Between those waters and the east line of the grant there was then what is termed on the plat accompanying and referred to in the patent a sand beach, which was, as stated, several hundred feet in width, thus separating by that beach the east line of the grant from the river.

*Mr. G. A. Finkelnburg, Mr. Edward S. Robert* and *Mr. Edward P. Johnson* for plaintiff in error.

*Mr. Charles Claflin Allen* for defendant in error. *Mr. Charles W. Bates* and *Mr. B. Schnurmacher* were on his brief.

Mr. Justice Peckham, after making the foregoing statement of facts, delivered the opinion of the court.

A motion was made in this case to dismiss the writ of error for lack of jurisdiction, and a decision of the motion was reserved

until after an argument of the case upon the merits.    The whole case having been argued, it becomes necessary to dispose of the motion to dismiss.

The motion is based upon the averment that there is no Federal question involved, and that even if there were one, it was not properly raised in the court below.·  We think that, for the reasons now to be stated, the motion to dismiss must be granted.

In our judgment there is no Federal question arising by reason of plaintiff's claim under the patent put in evidence by her as the source of her title to the land in question.    With reference to the first clause of section 709 of the Revised Statutes, it appears plainly that the validity of the patent has never been questioned.    Nor has the validity of any treaty or statute of or authority exercised under the United States been drawn in question.    It is a pure question of the construction of the language used in the patent, whether the land granted therein reached the waters of the Mississippi River on the east, or whether, according to the courses and distances contained in the patent, the eastern limit of the land conveyed was some hundreds of feet west of the river.    It was really a question of fact as to how far east the measurements of the courses and distances carried the boundary.    There was no contention made as to the authority of the Government to convey the land to the bank of the river where the water was actually flowing, if it chose so to do.    The decision did not touch the question as to how far a grant by the Government, of land bounded by the waters of a navigable stream, would carry the title, whether to high water or low water, or out to the middle of the stream. If the grant from the United States had been bounded by the waters of a navigable river, and the right to make the grant to the extent claimed by the grantee, had been denied by a grantee under a State, the denial of the validity of the authority exercised in making such grant might bring the question of construction within the principle decided in *Packer* v. *Bird,* 137 U. S. 661, and *Shively* v. *Bowlby,* 152 U. S. 1.    In *Packer* v. *Bird,* it was a question how far a grant carried the title to land bounded by the margin of the Sacramento River, or, as stated by Mr. Justice Field, who delivered the opinion of the court in

that case, " The question presented is, whether the patent of the United States, describing the eastern boundary of the land as commencing *at a point on the river*, which was on the right and west bank, and running southerly *on its margin*, embraces the island within it, or whether, notwithstanding the terms of apparent limitation of the eastern boundary to the margin of the river, the patent carries the title of the plaintiff holding under it to the middle of the stream. The contention of the plaintiff is that the land granted and patented, being bounded on the river, extends to the middle of the stream, and thus includes the island. It does not appear in the record that the waters of the river at the point where the island is situated are affected by the tides; but it is assumed that such is not the case. The contention of the plaintiff proceeds upon that assumption." The opinion then proceeds with an examination of the question of what was the common law upon the subject, and whether that law had been adopted in the State of California where the land was. It was stated that it was "undoubtedly the rule of the common law that the title of owners of land bordering on rivers above the ebb and flow of the tide extends to the middle of the stream, but that where the waters of the river are affected by the tides, the title of such owners is limited to ordinary high-water mark. The title to land below that mark in such cases is vested, in England in the Crown, and in this country in the State within whose boundaries the waters lie, private ownership of the soils under them being deemed inconsistent with the interest of the public at large in their use for purposes of commerce."

It was said there was much conflict of opinion in the Western States as to what the true doctrine was, whether it was the common law, which decided the question by the ebb and flow of the tides, or the law of actual navigability of the river, and in the case then before the court it accepted the view of the Supreme Court of California in its opinion as expressing the law of that State, "that the Sacramento River being navigable in fact, the title of the plaintiff extends no farther than the edge of the stream." It was in a case involving such facts that the remark was made, in the course of the opinion, that the courts

of the United States would construe the grants of the General Government without reference to the rules of construction adopted by the States for their grants, but that whatever incidents or rights attached to the ownership of property conveyed by the Government would be determined by the States, subject to the condition that their rules do not impair the efficacy of the grants or the use and enjoyment of the property by the grantee. It was a necessary case for the court to adopt one or the other of these two conflicting rules for the construction of the grants of the General Government, and in making its decision as to the proper construction in such cases the court held that the question of construction became one of a Federal nature.

*Shively* v. *Bowlby, supra,* was much the same case, the controversy being as to the extent of the grant of the United States Government of land bounded by the Columbia River in the State of Oregon. The question was as to how far such a grant extended, (the actual limitations of the boundaries, by the language used, not being disputed,) whether in legal effect it granted lands under the water of the river, and the question was held to be a Federal one. In both cases it was decided that a grant by the Federal Government of land within a State, bounded by a navigable river, did not extend so far as to convey land below ordinary high water, and beyond that point the right of a grantee was governed by the law of the State, and the decisions of those courts were therefore in each instance affirmed.

In this case no such question arises. It is not the case of granting lands bounded by the waters of a navigable river and a claim made to an island in the river in one case and to the lands under water in the other, where the validity of the authority exercised, to the extent claimed, was drawn in question and the right to convey the land denied. Here no question is made as to the authority of the Government to convey the land to the water's edge, if it chose to do so. The validity of its conveyance under the authority of the acts of Congress referred to in the patent was not in any way controverted or drawn in question by defendant, but it was simply maintained that making correct measurements and construing the language of the grant

in the usual and ordinary way applicable to such instruments, (not at all a Federal question) the courses and distances set forth in the patent and its general description of the land conveyed did not as matter of fact bring the eastern boundary to the waters of the river. The issue thus made was not one of " validity," but one of fact as to where by the language of the grant was its eastern boundary line. Where such a question alone is involved there is not drawn in question the validity of a treaty or statute of or an authority exercised under the United States, and there is in fact no question of a Federal nature decided. As was remarked in *Cook County* v. *Calumet &c. Dock Company*, 138 U. S. 635, 653 : " The validity of a statute is not drawn in question every time rights claimed under such statute are controverted, nor is the validity of an authority every time an act done by such authority is disputed. The validity of the authority here was not primarily denied, and the denial made the subject of direct inquiry. *United States* v. *Lynch*, 137 U. S. 280 ; *Baltimore & Potomac Railroad* v. *Hopkins*, 130 U. S. 210."

In the first of these two cases cited, it was held that to enable this court to entertain jurisdiction under a writ of error upon the ground that the validity of an authority exercised under the United States was drawn in question, the validity of such authority must have been denied directly and not incidentally. In the case before us, there was no denial of the validity of the grant, directly or incidentally. In the *Hopkins* case, *supra*, it was held that the validity of a statute is drawn in question when the power to enact it is fairly open to denial and is denied, but not otherwise.

In *Blackburn* v. *Portland Gold Mining Company*, 175 U. S. 571, Mr. Justice Shiras, in delivering the opinion of the court dismissing a writ of error, refers to several cases which we think are relevant here. In *Borgmeyer* v. *Idler*, 159 U. S. 408, it was held that the matter in controversy, being money received by one of the parties as an award under a treaty of the United States with a foreign power, providing for the submission of claims against that power to arbitration, did not in any way draw in question the validity or construction of the treaty.

Here there is no question made of the validity of the authority exercised, but only a question of how far in fact it was exercised.

In *Gillis* v. *Stinchfield*, 159 U. S. 658, the dispute arose concerning the ownership of a mining claim. In the course of the opinion in the *Blackburn* case, referring to the *Gillis* case, it was said: "It is true that this court put its judgment on the ground that the judgment of the state Supreme Court was based upon an estoppel, deemed by that court to operate against the plaintiff in error upon general principles of law, irrespective of any Federal question. Still the case is authority for the proposition that controversies in respect to titles derived under the mining laws of the United States may be legitimately determined in the state courts, and that to enable the court to review the judgment in such a case it must appear not only that the application of a Federal statute was involved, but that the controversy was *determined by a construction put upon the statute* adverse to the contention of one of the parties."

Here there was no construction put upon any statute, nor upon any authority exercised, but only a construction upon the language used in the patent, admitting the validity of all statutes, and also the validity of any authority actually exercised, and the only and simple question decided was that the language used in the patent, assuming its validity, bounded the land conveyed under it, not by the river on the east, but by a line which was separated from the waters of the river by a sand beach several hundred feet in width.

The *Blackburn* case was followed by *Shoshone Mining Company* v. *Rutter*, 177 U. S. 505, which reaffirmed the doctrine.

We conclude that no Federal question arises upon the construction of the language of the patent given it by the state court, under the first clause of section 709 of the Revised Statutes.

Nor was any Federal question raised under the third clause of that section. Under that clause no title, etc., or authority exercised under the United States, was specially set up and claimed by the plaintiff, and there was no decision against any title, etc., specially set up or claimed by the plaintiff. There was no decision of any Federal question whatever. We do not

hold it was necessary to plead the claim in order to show it was specially set up, but it must have been so referred to and mentioned as to show that it was present in the minds of the parties claiming the right, or must have been in some way presented to the court. *Oxley Stave Co.* v. *Butler County*, 166 U. S. 648; *Green Bay &c. Co.* v. *Patten Co.*, 172 U. S. 58; *Columbia Water Power Co.* v. *Columbia Railway*, 172 U. S. 475; *Dewey* v. *Des Moines*, 173 U. S. 193, 199. And the decision that the grant did not extend to the river bank was not a denial of any authority claimed, but was only a decision that the grant did not in fact extend to the river, or, in other words, that the authority was not exercised. It was mere interpretation of the authority really exercised and not any denial of authority.

The plaintiff also claims that she obtained title to the land in question, if not under the patent, then by virtue of the provisions of the act of Congress, approved June 6, 1874, 18 Stat. 62, the first section of which is set forth in the margin.[1]

It does not appear in the record that any such claim was made in the trial court or upon appeal in the Supreme Court of the State. There was no denial of the validity of that act by the decision in question, and when the plaintiff introduced the *patent* in evidence there certainly was no claim thereby specially set up under the *act of Congress.* This claim does not seem ever to have been thought of until the case reached this court. At any rate, the record does not show that it was pleaded, proved, referred to, mentioned, or in any manner set

---

[1] CHAP. 223. An act obviating the necessity of issuing patents for certain private land claims in the State of Missouri, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That all of the right, title, and interest of the United States in and to all of the lands in the State of Missouri which have at any time heretofore been confirmed to any person or persons by any act of Congress, or by any officer or officers, or board or boards of commissioners, acting under and by authority of any act of Congress, shall be, and the same are hereby, granted, released, and relinquished by the United States, in fee simple, to the respective owners of the equitable titles thereto, and to their respective heirs and assigns forever, as fully and as completely, in every respect whatever, as could be done by patents issued therefor according to law.

up or claimed. The act does not in any event touch the point, as it refers to those cases in which no patents had been given, and does not cover the case where one had been issued and received in entire fulfillment of the obligations of the Government. As in our opinion the case involves no Federal question, the motion to dismiss will be granted on the ground of lack of jurisdiction.

*Dismissed.*