### JOY v. CITY OF ST. LOUIS et al.

#### (Circuit Court, E. D. Missouri, E. D.   March 25, 1903.)

1. **JURISDICTION OF FEDERAL COURTS—CONSTRUCTION OF STATUTE.**
   It was the purpose of Congress by the judiciary act of 1887, corrected by act of 1888, 25 Stat. 433 [U. S. Comp. St. 1901, p. 507], to contract the jurisdiction of the national courts, and all doubtful questions should be resolved against jurisdiction.

2. **SAME—FEDERAL QUESTION—JURISDICTIONAL ALLEGATIONS.**
   Jurisdiction cannot be conferred on a federal court by allegations that defendant intends to assert a defense based on the Constitution or laws of the United States, or by any other allegation anticipating a defense, but it must be shown that plaintiff's claim or right is one arising under such Constitution or laws.

3. **SAME—ACTION TO RECOVER LANDS CLAIMED UNDER SPANISH GRANT.**
   An action in ejectment to recover land claimed under a Spanish grant, protected by the Louisiana purchase treaty and subsequent confirmatory acts of Congress, does not involve the effect or validity of a treaty or law of the United States to confer jurisdiction on a federal court on that ground, where it appears from the petition that plaintiff's rights depend solely upon questions of fact as to whether the land in suit was within the boundaries of the original grant, or was occupied by his grantors at the time necessary to bring it within the provisions of the confirmatory acts.

At Law.   On demurrer to jurisdiction.

E. P. Johnson and G. A. Finkelnburg, for plaintiff.

Chas. Claflin Allen, Chas. W. Bates, and Wm. F. Woerner, for City of St. Louis.

¶ 2. See Courts, vol. 13, Cent. Dig. § 841.

TRIEBER, District Judge. This is an action of ejectment for the recovery of certain lands in the city of St. Louis, claimed by plaintiff by mesne conveyances from one La Beaume, who it was claimed was the owner in fee simple of the premises by virtue of a Spanish concession, dated February 15, 1799, and certain confirmations thereof by various acts of Congress hereinafter referred to. The jurisdiction of this court is invoked solely upon the ground that the cause of action is one arising under the laws of the United States, there being no diversity of citizenship alleged in the petition.

It is the settled law that the act of March 3, 1887, as corrected by the act of August 13, 1888, 25 Stat. 433 [U. S. Comp. St. 1901, p. 507], was intended by Congress to contract the jurisdiction of the national courts, and that all doubts must be resolved against jurisdiction. It is equally well settled that jurisdiction cannot be conferred by allegations that the defendant intends to assert a defense based on the national Constitution or laws of the United States, or by any other allegation, anticipating the defense. Tennessee v. Bank, 152 U. S. 554, 14 Sup. Ct. 654, 38 L. Ed. 511; Chappell v. Waterworth, 155 U. S. 102, 15 Sup. Ct. 34, 39 L. Ed. 85; Walker v. Collins, 167 U. S. 57, 17 Sup. Ct. 738, 42 L. Ed. 76; Sawyer v. Kochersperger, 170 U. S. 303, 18 Sup. Ct. 946, 42 L. Ed. 1046; Railway Company v. Bell, 176 U. S. 321, 20 Sup. Ct. 399, 44 L. Ed. 486; Arkansas v. Coal Company, 183 U. S. 185, 22 Sup. Ct. 47, 46 L. Ed. 144; Fergus Falls v. Water Company, 19 C. C. A. 212, 72 Fed. 873; Montana Company v. Boston, etc., Mining Company, 35 C. C. A. 1, 93 Fed. 274; Filhiol v. Torney (C. C.) 119 Fed. 974.

The allegation in the petition "that said claim of plaintiff as to the proper construction and legal effect of said confirmation acts of Congress approved June 13, 1812 (2 Stat. 748, c. 99), and June 6, 1874 (18 Stat. 62, c. 223 [U. S. Comp. St. 1901, p. 1512]), respectively, is disputed by defendants and contested by them in regard to the title to the land hereinafter described," must therefore be disregarded for the purpose of determining the question of jurisdiction, and the issue determined by the allegations in the petition, stating that plaintiff's claim or right is one arising under the laws of the United States. Does every claim in which an act of Congress is claimed as a basis of the right confer jurisdiction on the national courts?

In Romie v. Casanova, 91 U. S. 379, 23 L. Ed. 374, the question was which of the parties had actually obtained the grant of the premises in controversy, both of them claiming title from the city of San Jose, and it was held: "Even if it depended upon the treaty of Guadaloupe Hidalgo and the several acts of Congress to ascertain and settle private land claims in California, there would be no jurisdiction. Both parties admitted that title, and their litigation extends only to the determination of the rights which they have severally acquired under it." So, in the case at bar, leaving out the allegations in the petition anticipating the defense, there is nothing to show that the validity or construction of any act of Congress is involved in this case. No one questions the validity of these acts of Congress under which plaintiff claims, and no one disputes that La Beaume, under

whom plaintiff now claims title, is, under his concession and the act of confirmation of Congress of June 13, 1812, entitled to all lots or outlots in his possession prior to the 20th day of December, 1803, or that under the act of 1874 they would be the legal owners of all lands of which theretofore they had been, either by Spanish grants or concessions, or by the acts of Congress confirming these claims, the equitable owners.

In Gold Washing Water Co. v. Keyes, 96 U. S. 199, 24 L. Ed. 656, an action instituted in the state court was sought to be removed to a national court upon the allegation "that they claimed the right to thus use [the channels of the river and its tributaries] under the provisions of certain specified acts of Congress; that the action arose under and that its determination will necessarily involve and require the construction of the laws of the United States specifically enumerated, as well as the pre-emption laws." The court denied jurisdiction; Chief Justice Waite, who delivered the opinion of the court, saying:

"Before, therefore, a Circuit Court can be required to retain a cause under this jurisdiction, it must in some form appear upon the record, by a statement of facts in legal and logical form, such as is required in good pleading, that the suit is one which really and substantially involves a dispute or controversy as to the right which depends upon the construction or effect of the Constitution or some law or treaty of the United States."

So far as La Beaume or those claiming under him are affected by the acts of Congress relied upon by plaintiff in his petition (the acts of June 13, 1812, 2 Stat. 748, and of June 6, 1874, 18 Stat. 62 [U. S. Comp. St. 1901, p. 1512]), nothing was granted to him which he did not possess before the passage of these acts. His rights which he acquired by grant or concession from the Spanish government, while Louisiana territory belonged to Spain, were protected by the treaty of Paris, usually spoken of as the Louisiana Purchase Treaty, and Congress merely confirmed these rights.

Section 1 of the act of June 13, 1812, confirms "the rights, titles and claims to town or village lots, out-lots," etc., "which lots have been inhabited, cultivated or possessed prior to the 20th day of December, 1803, to the inhabitants of the respective town or village," etc., "who were in possession of the land claimed"; but what the metes and bounds are of the land claimed to have been in possession of La Beaume are questions of fact, to be determined as any other facts, without requiring any construction of the act of Congress.

The act of June 6, 1874, 18 Stat. 62 [U. S. Comp. St. 1901, p. 1512], "relinquishes all right, title, and interest of the United States in and to all lands in the state of Missouri which have at any time heretofore been confirmed to any person or persons * * * in fee simple to the respective owners of the equitable titles thereto." Who these equitable owners are, and what premises have theretofore been confirmed to any person, are also questions of fact, for the determination of which no act of Congress requires construction.

In Sweringen v. St. Louis, 185 U. S. 38, 22 Sup. Ct. 569, 46 L. Ed. 795, a part of this identical grant was in controversy in an action

determined by the state courts of the state of Missouri. It was sought to have the decision of the Supreme Court of that state reviewed by the Supreme Court of the United States by writ of error, upon the ground that a federal question was involved, to wit, the effect of the patent issued by the United States and the acts of Congress relied on in this case. But the court dismissed the writ of error for want of jurisdiction, holding that the issue involved was not one of validity of the acts of Congress or the patent issued by the United States, but one of fact.

The case of French Glenn Co. v. Springer, 185 U. S. 47, 22 Sup. Ct. 563, 46 L. Ed. 800, decided on the same day as the Sweringen Case, does not conflict with that decision, as claimed by counsel for plaintiff. In that case both parties claimed under titles derived from the United States, one under the patent granted to the state of Oregon under the swamp land grant, and the other under the homestead laws. To determine these conflicting rights it was necessary to determine the acts of Congress under which the patent to the state was issued.

To avoid the effect of the decision of the Supreme Court in the Sweringen Case, plaintiff claims that he does not rely upon any patent, but under the acts of Congress alone, which confirm the La Beaume grant obtained before the concession of Louisiana to the United States. Conceding that plaintiff can do that, although the petition alleges the granting by the United States of a patent to those under whom plaintiff claims, still neither the validity nor the construction of these acts of Congress is involved or necessary for the determination of the issues in this action. A finding of fact, and that alone, will determine this controversy. It is further claimed that the Sweringen Case was on error to the Supreme Court of the state, and the original jurisdiction of the national courts is much broader than that of the Supreme Court on writ of error to the highest court of a state. To a certain extent this is true, but it is not applicable to the cause at bar. In Files v. Davis (C. C.) 118 Fed. 465, the writer of this opinion had occasion to pass upon that question, and it will serve no useful purpose to repeat what was there said.

That a controversy in respect to lands, one of the parties to which had derived his title directly from an act of Congress, presents no federal question, for that reason alone, which would confer jurisdiction on the Circuit Court of the United States, is now well settled.

Blackburn v. Portland Gold Mining Co., 175 U. S. 571, 20 Sup. Ct. 222, 44 L. Ed. 276, was originally instituted in the Circuit Court of the United States for the district of Colorado. The jurisdiction of the court was invoked, upon the ground that the rights of the parties depended upon the construction of sections 2325 and 2326 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1429], but the court held that there was no jurisdiction.

In Shoshone Mining Company v. Rutter, 177 U. S. 505, 20 Sup. Ct. 726, 44 L. Ed. 864, it was sought to have the Blackburn Case overruled. Mr. Justice Brewer, who delivered the opinion of the court in that case, said:

"In this case the same question (as in Blackburn v. Portland Gold Mining Co.) is again presented, and has been elaborately argued by counsel against the opinion we then announced. Its importance as well as the great ability in which it was argued by counsel for appellee have induced a careful re-examination of the question."

He then says:

"We pointed out in the former opinion that it was well settled that a suit to enforce a right which takes its origin in the laws of the United States is not necessarily one arising under the Constitution and laws of the United States, within the meaning of the jurisdictional clauses, for, if it did, every action to establish title to real estate (at least in the newer states) would be such a one, as all titles in those states come from the United States or by virtue of its laws."

A late case instructive on that point is Filhiol v. Maurice, 185 U. S. 108, 22 Sup. Ct. 560, 46 L. Ed. 827. In that case the question of jurisdiction was not raised by counsel in the trial court, nor was it raised in the Supreme Court, but the latter court of its own motion took notice of it. The jurisdiction had been invoked upon the ground that plaintiff's title rested upon a Spanish grant made on February 22, 1778, and was protected by the Louisiana Purchase Treaty, and that the possession of the defendant as a lessee of the government (the premises in controversy being the government reservation of Hot Springs, Ark.) was within the prohibition of the fifth amendment to the national Constitution. The court held that the Circuit Court was without jurisdiction, as no right, title, privilege or immunity was asserted as derived from the Constitution or the treaty as against the defendant.

In Western Union Telegraph Co. v. Ann Arbor Railroad Company, 178 U. S. 237, 20 Sup. Ct. 867, 44 L. Ed. 1052, it was sought to have the Supreme Court review on error the decision of the United States Circuit Court of Appeals, upon the ground that the questions involved arose under the Constitution and laws of the United States. The court dismissed the writ of error for want of jurisdiction, saying:

"When a suit does not really and substantially involve a dispute or controversy as to the effect or construction of the Constitution or laws of the United States, upon the determination of which the result depends, it is not a suit arising under the Constitution or laws, and it must appear on the record, by statement in legal and logical form, such as is required in good pleading, that the suit is one which does really and substantially involve a dispute or controversy, as to the right which depends upon the construction of the Constitution or some law or treaty of the United States, before the jurisdiction can be maintained on this ground."

The court is of the opinion that it appears from the plaintiff's amended petition that his rights depend solely upon questions of fact, whether the premises in controversy were included in the original survey and concession to La Beaume, or were inhabited, cultivated, or possessed by him prior to the 20th day of December, 1803, or were included in any of the confirmations of Spanish grants in the state of Missouri by an act of Congress.

For this reason, there being no diversity of citizenship alleged in the petition, the court is without jurisdiction, and the demurrer is sustained.