McGILVRA et al. v. ROSS, State Land Com'r, et al.

BRESSLER v. SAME.

(Circuit Court of Appeals, Ninth Circuit. October 12, 1908.)

No. 1,565.

1. COURTS (§ 405*)—FEDERAL COURTS—QUESTIONS OF JURISDICTION.

The question of the jurisdiction of the Circuit Court, where it appears on the record on an appeal to the Circuit Court of Appeals, cannot be ignored, but must be determined by that court in disposing of the appeal, although not made a ground of appeal.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 405.*]

2. COURTS (§ 282*)—FEDERAL QUESTION.

Const. Wash. art. 17, § 1, which asserts the ownership by the state of the beds and shores of all navigable waters therein, but expressly provides that it shall not be construed so as to debar any person from asserting his claim to vested rights in the courts of the state, is not in violation of the federal Constitution, as depriving riparian owners under previous grants from the United States of their property without due process of law, nor does a suit by such owners to enjoin officers of the state from selling shore lands under a statute enacted pursuant to such provision involve any constitutional question, which gives a federal court jurisdiction thereof.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 282.*]

3. COURTS (§ 285*)—FEDERAL QUESTION.

Patents issued by the United States under general laws to lands in a territory bordering on navigable waters do not convey by their own force title below high-water mark, but leave the question of the ownership and use of the shores to the sovereign control of the state when organized; and, the law having been so declared by the Supreme Court of the United States, a suit by grantees of such lands to enjoin a sale of adjoining shore lands by the state does not involve the construction of any law of the United States, which gives a federal court jurisdiction.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 285.*

Jurisdiction in cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purchasing Co. v. Boston & M. C. C. & S. Min. Co., 35 C. C. A. 7.]

Appeal from the Circuit Court of the United States for the Northern Division of the Western District of Washington.

For opinion below, see 161 Fed. 398.

Actions in equity to restrain the defendants, as officers of the state of Washington, from platting, selling, and offering for sale, and contracting for the sale of, any of the shore lands of Lake Washington and Lake Union, in said state, lying in front of the lands owned by complainants, and described in their respective bills of complaint.

Chas. K. Jenner (William Martin, of counsel), for appellants.

John D. Atkinson, Atty. Gen., E. C. MacDonald, Asst. Atty. Gen., Donald F. Kizer (J. B. Alexander and I. B. Knickerbocker, Asst. Attys. Gen., and John W. Roberts, of counsel), for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

MORROW, Circuit Judge. The controversy in these two cases relates to the rights of the complainants, as alleged riparian owners, with respect to certain lands on the shores of Lakes Washington and Union, in the state of Washington, lying in front of lands owned by the complainants. In the court below demurrers were interposed to the bills of complaint on the grounds that they did not state facts sufficient to entitle plaintiffs to the relief prayed for and that the court was without jurisdiction of the parties or the subject-matter. The court sustained the demurrers and dismissed the bills for want of equity, without discussing the question of jurisdiction. It is not alleged in either complaint that there is a diversity of citizenship with respect to the parties to the action. The jurisdiction of the Circuit Court did not rest, therefore, on diverse citizenship, and, unless the cases arose under the Constitution and laws of the United States, the jurisdiction of the Circuit Court was not properly invoked, and should not have been maintained. Defiance Water Company v. Defiance, 191 U. S. 184, 190, 24 Sup. Ct. 63, 48 L. Ed. 140.

The question of jurisdiction of the Circuit Court was not discussed on appeal in this court; but, as said by the Supreme Court in the case just cited:

"The fundamental question of jurisdiction, first of this court, and then of the court from which the record comes, presents itself on every writ of error or appeal, and must be answered by the court, whether propounded by counsel or not."

When the jurisdiction of the Circuit Court is in issue, the question is proper to be determined by the Supreme Court, as provided by Act March 3, 1891, c. 517, § 5, 26 Stat. 827 (U. S. Comp. St. 1901, p. 549). But where the question appears in the record, in a case brought to this court as one arising under the Constitution and laws of the United States, it cannot be ignored and must be determined in disposing of the appeal. The jurisdiction of the Circuit Court upon constitutional grounds is based upon the following allegations contained in the bills of complaint (as the alleged rights are identical in both cases, reference will be made to the bill of complaint in the McGilvra Case):

It is alleged that the lands described in the complaint were purchased from the United States prior to the admission of the state of Washington into the Union; that said lands touched the waters of Lake Washington, and that the waters of Lake Washington constituted and were the boundary of the tracts conveyed as to every portion of said tracts touched by said lake; that the complainants became and were vested with the ownership of those portions of said Lake Washington immediately in front of the respective tracts out into said lake to the deep waters thereof. It is alleged that, under section 1 of article 17 of the Constitution of the state of Washington, the state of Washington asserts its ownership to the beds and shores of all navigable waters in the state up to and including the line of ordinary high water within the banks of all navigable rivers and lakes; that by virtue and authority of this provision of the Constitution the state of Washington claims the ownership in fee of all the waters and lands under water of Lake Washington, up to and including the line of ordinary high

water, and by reason of said claims of ownership the Legislature of the state of Washington passed the acts mentioned in the complaint, providing for the sale of such lands, and that said constitutional provision seeks to confiscate without compensation, and if declared valid and of effect will confiscate without compensation, the rights of the complainants set forth in the complaint, and will divest the plaintiffs of their said property rights without compensation and without due process of law, all of which it is alleged is contrary to the protection guaranteed to the citizens of the United States by the fourteenth amendment to the Constitution of the United States. And it is charged that the defendants, acting under the authority of the Constitution and laws of the state, are preparing to sell, and threaten to and will sell, the shore lands of Lake Washington lying in front of their lands, and threaten to take and convert into money the properties described belonging to complainants, without compensation to complainants and without due process of law, to the irreparable injury and damage of the complainants.

With respect to the constitutional provision of the state of Washington, it is sufficient to say that, while it asserts the ownership of the state in the beds and shores along navigable waters in the state, it expressly provides that it "shall not. be construed so as to debar any person from asserting his claim to vested rights in the courts of the state." There is, therefore, nothing in this constitutional provision depriving the complainants of any of their constitutional rights, nor is there anything in the statute of the state referred to in the complaint that deprives plaintiffs of their property without due process of law. In Newburyport Water Co. v. Newburyport, 193 U. S. 561, 576, 24 Sup. Ct. 553, 556, 48 L. Ed. 795, the Supreme Court said:

"If jurisdiction is to be determined by the mere fact that the bill alleged constitutional questions, there was, of course, jurisdiction. But that is not the sole criterion. On the contrary, it is settled that jurisdiction does not arise simply because an averment is made as to the existence of a constitutional question, if it plainly appears that such averment is not real and substantial, but is without color of merit."

In Devine v. Los Angeles, 202 U. S. 313, 322, 26 Sup. Ct. 652, 657, 50 L. Ed. 1046, the court said:

"There being no diversity of citizenship, the jurisdiction of the Circuit Court could only be maintained upon the ground that the suit arose under the Constitution or laws or treaties of the United States, and a suit does not so arise unless it really and substantially involves a dispute or controversy as to the effect or construction of the Constitution or some law or treaty of the United States upon the determination of which the result depends."

It is clear that the averments of the bills do not state any real or substantial question arising under the Constitution of the United States. Do they allege any question arising under any law of the United States? It is alleged in the complaint in the McGilvra Case that complainant's lands were purchased under the provisions of the act of Congress of the 24th of April, 1820, "An act making further provision for the sale of the public lands," approved April 24, 1820 (3 Stat. 566, c. 51), and in the Bressler Case that complainant's land was entered under the act of Congress of September 27, 1850, en-

titled "An act to create the office of surveyor general of the public lands in Oregon, and to provide for the survey and to make donations to settlers of the said public lands" (9 Stat. 496, c. 76). The mere assertion of a title to lands derived by the complainants under and by virtue of a patent granted by the United States presents no question which of itself confers jurisdiction on a court of the United States. Blackburn v. Portland Gold Mining Co., 175 U. S. 571, 20 Sup. Ct. 222, 44 L. Ed. 276; Florida Central, etc., R. R. v. Bell, 176 U. S. 321, 20 Sup. Ct. 399, 44 L. Ed. 486; Shoshone Mining Co. v. Rutter, 177 U. S. 505, 20 Sup. Ct. 726, 44 L. Ed. 864; De Lamar's Nevada G. M. Co. v. Nesbitt, 177 U. S. 523, 20 Sup. Ct. 715, 44 L. Ed. 872. In Packer v. Bird, 137 U. S. 661, 11 Sup. Ct. 210, 34 L. Ed. 819, the question was whether the title of an owner of land bordering on a navigable river above the ebb and flow of the tide extended to the middle of the stream. The court held that:

"The courts of the United States will construe the grants of the general government without reference to the rules of construction adopted by the states for their grants; *but whatever incidents or rights attach to the ownership of property conveyed by the government will be determined by the states.* subject to the limitation that their rules do not impair the efficiency of the grant or the use and enjoyment of the property by the grantee. As an incident of such ownership the right of the riparian owner, where the waters are above the influence of the tide, will be limited according to the law of the state, either to low or high water mark, or will extend to the middle of the stream."

But the complainants claim that, as the grants in these cases were made by the United States prior to the admission of the state of Washington into the Union, the law of the United States prevailing at that time determines the rights, privileges, and appurtenances of the lands granted, and not the law of the state subsequently organized from that territory. This claim cannot be sustained. In the case of Joy v. St. Louis, 201 U. S. 332, 26 Sup. Ct. 478, 50 L. Ed. 776, the complainant claimed title to a lot in St. Louis, in the state of Missouri, derived from a patent issued under the act of Congress approved March 3, 1807 (2 Stat. 440, c. 36), and a confirmation of the grant made by the act of Congress approved June 13, 1812 (2 Stat. 748, c. 99), and an act obviating the necessity of issuing patents for certain private land claims in the State of Missouri and for other purposes, approved June 6, 1874 (18 Stat. 62, c. 223 [U. S. Comp. St. 1901, p. 1512]). Missouri was admitted into the Union August 10, 1821. The original grant and its confirmation under the acts of Congress of March 3, 1807, and June 13, 1812, was, therefore, made by the United States while Missouri was a territory. The question was as to the boundary of the grant on the Mississippi river. The court held that the question was one of local or state law, and not one of a federal nature, citing Sweringen v. St. Louis, 185 U. S. 38, 22 Sup. Ct. 569, 46 L. Ed. 795; St. Anthony Falls, etc., Co. v. St. Paul Water Commissioners, 168 U. S. 349, 359, 18 Sup. Ct. 157, 42 L. Ed. 497, and Packer v. Bird, 137 U. S. 661, 11 Sup. Ct. 210, 34 L. Ed. 819. The court also cites Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548, 38 L. Ed. 331. In the latter case the controversy related to certain lands below high-water mark in the Columbia river in the state of Oregon. The

plaintiffs derived their title from the state of Oregon, the defendants obtained title from the United States while Oregon was a territory, and the question was whether the grant from the United States bounded by the Columbia river passed any right or title to lands below high-water mark as against subsequent deeds from the state of Oregon. The Supreme Court of the state of Oregon held that it did not. Bowlby v. Shively, 22 Or. 410, 30 Pac. 154. The Supreme Court of the United States, affirming this decision, said:

"The United States, while they hold the country as a territory, having all the powers both of national and municipal government, may grant, for appropriate purposes, titles or rights in the soil below high-water mark of tide waters; but they have never done so by general laws, and, unless in some case of international duty or public exigency, have acted upon the policy, most in accordance with the interest of the people and with the object for which the territories were acquired, of leaving the administration and disposition of the sovereign rights in navigable waters and in the soil under them to the control of the states, respectively, when organized and admitted into the Union."

The court further said:

"Grants by Congress of portions of the public lands within a territory to settlers therein, though bordering on or bounded by navigable waters, convey, of their own force, no title or right below high-water mark, and do not impair the title and dominion of the future state when created, and leave the question of the use of the shores by the owners of uplands to the sovereign control of each state, subject only to the rights vested by the Constitution in the United States." Shively v. Bowlby, 152 U. S. 58, 14 Sup. Ct. 570 (38 L. Ed. 331).

The act of Congress of September 27, 1850, involved in Shively v. Bowlby, is the act of Congress involved in the Bressler Case; and the acts of Congress involved in Joy v. St. Louis, like the acts of Congress involved in the McGilvra Case, related to grants of title by the United States to land which in the particular case fronted on navigable waters. In other words, the decisions of the Supreme Court in the two cases cited are applicable to these two cases now before the court; and, it having been determined by the Supreme Court that the acts of Congress involved in these cases do not of their own force convey any title or right below high-water mark, and do not impair the title or dominion of the state subsequently created, the bills of complaint in the present cases do not present any question arising under the laws of the United States. This question having been determined by the Supreme Court, it is no longer a question arising under a law of the United States. Kansas v. Bradley (C. C.) 26 Fed. 289; Montana Ore Purchasing Co. v. Boston & M. C. C. & S. Min. Co., 57 U. S. App. 13, 29 C. C. A. 462, 85 Fed. 867; Blue Bird Min. Co. v. Largey (C. C.) 49 Fed. 289, 291; Inez Mining Co. v. Kinney (C. C.) 46 Fed. 832, 834; Western Union Tel. Co. v. Ann Arbor R. Co., 178 U. S. 239, 20 Sup. Ct. 867, 44 L. Ed. 1052.

The Circuit Court was, therefore, without jurisdiction in these cases, and the bills of complaint were properly dismissed. The views here expressed would require this court to affirm the decrees of the Circuit Court dismissing the bills of complaint, if the cases were considered on their merits.

The decree of the Circuit Court is affirmed.